Douglas R. Short
10763 South 2000 East
Sandy Utah 84092
(801) 755-3955 (telephone)
drs@consumerlawutah.com

*Counsel for Raymond W. Short*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: Douglas R. Short, Debtor | Bankruptcy No.  19-29471 |
| _____ | Adversary Proceeding No. 22-02004 |
| Peggy Hunt, Chapter 7 Trustee for the Douglas Short Bankruptcy Estate | Chapter 7 |
| Plaintiff | Hon. Kevin Anderson |
| v. | |
| Raymond Short | |
| Defendant | |
| _____ | |
| Raymond Short | |
| Counterclaimant | |
| v. | |
| Peggy Hunt, Chapter 7 Trustee, Yan Ross, John Bogart, and Telos Venture Group PLLC | |
| Counterclaim Defendants | |

---

### AMENDED ANSWER and COUNTERCLAIMS
### And DEMANDS FOR JURY TRIAL

---

Defendant Raymond Short, appearing specially, hereby answers the Complaint filed by Peggy

1

Hunt as Trustee as follows:

## DENIAL OF CONSENT

## And Demand for Jury Trial

Defendant does not consent to the bankruptcy court entering any final orders of judgment in this case, and hereby expressly demands a jury trial as guaranteed by the Utah Constitution as recognized in *International Harvester Credit Corp. v. Pioneer Tractor & Implement*, 626 P.2d 418, 420, 421 (Utah 1981), and by UCA 78B-5-101, and as may otherwise be allowed or required. Defendant hereby expressly objects to the bankruptcy court conducting any jury trial on Trustee's claim or his counterclaims.

## First Defense

## Insufficient Process, Insufficient Service of Process, and Lack of Personal Jurisdiction

Trustee claims to have served defendant a summons and copy of the complaint by certified mail, but defendant never received any copy of the summons or complaint by mail from the Trustee. An unknown person apparently signed the return receipt (without a clear name or date of acceptance printed on the receipt giving clear notice to the Trustee that the receipt was invalid for purposes of confirming service on defendant). Trustee, based on the patently defective return receipt, took a default against defendant without the Court having any personal jurisdiction over defendant, and without giving defendant any notice that the Trustee was filing the request for a default so as to deny defendant due process in the entry of the default. Given the lack of actual service of any summons or complaint, it is asserted that the Court lacks any personal jurisdiction over defendant and cannot proceed any further with this action.

2

**SECOND DEFENSE**

**Failure to state a claim upon which relief may be granted**

Defendant asserts that each individual cause of action asserted in the complaint fails to state a claim upon which relief may be granted as prayed, and that Trustee has not met her burden under Twombley and Iqbal to state plausible claims, but has merely made numerous conclusory allegations without alleging supporting facts, or even in contravention of the facts alleged, and the facts known to the Trustee before filing this action.

**THIRD DEFENSE**

**Responses to allegations in Complaint**

As to paragraph 1, defendant lacks sufficient information and knowledge to know whether Trustee was duly appointed and therefore denies.

As to paragraph 2, defendant admits.

As to paragraph 3, defendant currently lacks sufficient information and knowledge to know whether the Court has jurisdiction and therefore denies.  Furthermore, as noted above, defendant objects to the bankruptcy court entering any final orders or judgments based on the Complaint or conducting any jury trial.

As to paragraph 4, defendant currently lacks sufficient information and knowledge to know whether the venue is proper and therefore denies.

As to paragraph 5, defendant currently lacks sufficient information and knowledge to know whether this adversary is proceeding is a core proceeding as to all of the claims made, and

therefore denies.

As to paragraph 6, defendant admits.

As to paragraph 7, defendant currently lacks sufficient information and knowledge to know when the deadline to file proofs of claims and therefore in an abundance of caution denies, but asserts that his proof of claim was timely.

As to paragraph 8, defendant admits Proof of Claim speaks for itself.

As to paragraph 9, defendant admit that the amended proof of claim speaks for itself.

As to paragraph 10, defendant admits the proof of claim speaks for itself.

As to paragraph 11, defendant admits that Claim 3-2 is based in part on the Loan and Security Agreement, but asserts it is also based on additional verbal agreements with Debtor related to the subject matter addressed in the Loan and Security Agreement, which is not an integrated agreement containing all of the agreements of the parties thereto, and therefore Claim 3-2 also seeks performance of the verbal agreements by defendant in relation to the subject matter of the Loan and Security Agreement.

As to paragraph 12, defendant admits the Loan and Security Agreement speaks for itself.

As to Paragraph 13, defendant admits the Loan and Security Agreement speaks for itself as to what is contained there, but affirmatively asserts that the Loan and Security Agreement is not an integrated document containing all agreements related thereto.  Defendant asserts the allegation in paragraph 13 is ambiguous as to what interest and or what attorney fees it may be referring, and therefore denies any inference that there is no obligation of Debtor to pay defendant interest on the "outstanding business loan" of which the Loan and Security Agreement it the substituted contract thereof, or to pay interest on any obligations under the Loan and

Security Agreement, and affirmatively asserts that interest is accruing on all obligations pursuant

to the statutory interest rate of 10%, including those which predate the Loan and Security

Agreement, and affirmatively asserts that Debtor (or the Estate) is obligated to pay such interest

as required by statute, and that such interest is fully secured by the contractual lien created by the

Loan and Security Agreement as per the original intent of the parties.  Further, defendant denies

any inference that Debtor is not obligated to pay defendant's attorney fees incurred in relation to

the Surety Bond in that defendant and Debtor expressly agreed verbally (so as to clarify any

ambiguity in the Loan and Security Agreement as to what expenses and costs Debtor would

reimburse defendant if he would agree to post a surety bond with the district court) that Debtor

would pay any and all attorney fees incurred by defendant in relation to the Surety Bond,

including defending against its improper invocation and attempt to enforce it contrary to its

terms, including if the conditions provided therein were not met, or in violation of defendant's

constitutional rights, and defendant has relied on those oral clarifications/agreements and acted

accordingly in reasonable expectation of full payment of any such fees being paid by Debtor and

secured by the Loan and Security Agreement.  Defendant admits that there is no right of either

party to the Loan and Security Agreement to collect attorney fees between the parties thereto.

       As to paragraph 14, defendant admits that Claim 3-2 is also based on the documents

identified therein, which affirmatively prove contrary to Trustee's claims that defendant did in

fact perform as promised in the Loan and Security Agreement by filing a surety bond with the

district court, and that he did in fact pay the 2015 Judgment in full pursuant to the Amended

Supersedeas Bond as he promised he would under the Loan and Security Agreement, such that

he now has been subrogated to the judgment creditor's rights and therefore owns the 2015

Judgment against Debtor, as expressly provided by UCA 78B-5-810, and therefore has the

exclusive right to control, enforce, and satisfy the 2015 Judgment against Debtor (and the Estate)

in all respects as if defendant had originally obtained the judgment in his own name, and

therefore the former Judgment Creditors Ross and Wagner no longer have any interest in that

Judgment, and the Trustee is obligated as a matter of law to recognize defendant as the Judgment

Creditor of the 2015 Judgment, and to not distribute any funds from the estate to claimants Ross

and Wagner based on their untimely claims seeking to satisfy the 2015 Judgment, and that

defendant's claims based on payment of the 2015 Judgment are secured pursuant to the

contractual lien created by the Loan and Security Agreement.

As to paragraph 15, defendant admits that the Loan and Security Agreement speaks for

itself to the extent that it does speak, but denies that the Trustee has fully set forth all of the terms

of the Loan and Security Agreement in paragraph 15, and that the Trustee has omitted relevant

portions thereof.

As to paragraph 16, defendant denies and asserts that the allegation is ambiguous as to

the time reference in that at the time of execution of the Loan and Security Agreement Debtor

thereby became immediately obligated to repay defendant as provided therein, and as agreed to

by the parties, in relation to the filing of a surety bond with the district court, and affirmatively

asserts that Debtor had an obligation to defendant at the time the Loan and Security Agreement

was executed, both for the funds previously loaned, which obligation was expressly recognized

in the Loan and Security Agreement, a substituted contract for the original promise to repay, as

follows: "Douglas R. Short also hereby expressly recognizes that he already owes Raymond W.

Short Forty Thousand Dollars ($40,000) in connection with an equipment lease Raymond Short

previously provided to Priority Press and Marketing, which lease Douglas Short personally

guaranteed, which lease was not in fact repaid. Raymond Short is not willing to provide any

additional financial assistance unless this prior lease obligation is also secured;" as well as the

consideration being given through the Loan and Security Agreement, namely the promise to

repay any funds expended by defendant pursuant to the parties agreements as follows: "Douglas

Short hereby agrees to repay all amounts owed to Raymond Short hereunder, or as may become

owed hereunder, on such terms as the parties may agree dependent on Douglas Short's variable

financial circumstances."

As to paragraph 17, defendant denies in that defendant agreed to effectively loan the

funds to Debtor to cover the 2015 Judgment pending appeal by filing a surety bond with the

district court, and if necessary to pay the judgment creditors if the judgment was in fact affirmed

on appeal, (and on such other conditions set forth in the Amended Supersedeas Bond), and

affirmatively asserts that he did in fact meet his obligation to Debtor by paying the judgment

creditors Ross and Wagner in full for the 2015 Judgment.

As to paragraph 18, this is a legal conclusion and not a factual allegation requiring any

denial, nevertheless defendant denies and asserts that this is a frivolous allegation under both the

facts and the law, for which defendant should be awarded his attorney fees and such other

sanctions as may be appropriate if Trustee does not withdraw it in that defendant did in fact give

consideration for the obligations agreed to by Debtor by agreeing to post a surety bond with the

district court in order to stop the collection efforts of the judgment creditors, which obligation

defendant did in fact perform.

As to paragraph 19, defendant admits that the case referred to is the correct case where he

7

did in fact post the Amended Supersedeas Bond, but lacks sufficient information and knowledge

as to the stylization and case number, etc. so in an abundance of caution denies.

As to paragraph 20, defendant denies that the Third District Court on December 11, 2015

"required payment of" the Supersedeas Bond which was entered that same day, inasmuch as the

2015 Judgement was on appeal at that time, and no purported requirement to pay any surety

bond was entered until years later.  As to whether the copies of the Supersedeas Bond and the

Amended Supersedeas Bond – Surety attached are true and correct copies, which copies are not

certified copies, defendant asserts that the true and correct copies are on file in the Third District

Court and denies any deviation therefrom.  Further, defendant affirmatively asserts that the

"Supersedeas Bond" as originally posted was no longer in effect once the Amended Supersedeas

Bond was posted in that the Amended Supersedeas Bond replaced in full the prior Supersedeas

Bond so as to render it moot, and notes that the terms thereof are in fact different.

As to paragraph 21, defendant asserts that the terms of the original Supersedeas Bond are

irrelevant because it was replaced in full by entry of the Amended Supersedeas Bond.  Further

defendant asserts the true Supersedeas Bond speaks for itself, and further that the Trustee has

misquoted the Supersedeas Bond and therefore the quote is denied.  Further, to the extent that the

Trustee was referring to the Amended Supersedeas Bond – Surety, the Trust has impermissibly

attempted to modify the language quoted by changing the reference to damages etc., the true

version of which states: "awarded them in the Order and Judgment," to an impermissibly

modified version "awarded them [in the district court]," and therefore denies the accuracy of the

Trustee's selective and inaccurate quote as not only being inaccurate, but as also being

intentionally misleading.  Furthermore, defendant denies that the quote is accurate in that it

implies an unconditional obligation by omitting the express conditions set forth in the Amended Supersedeas Bond for there to be any obligation to pay pursuant to the Amended Supersedeas Bond, and therefore the selective quote is again misleading, and therefore any intended allegation is denied.

As to paragraph 22, defendant admits that the Third District Court attempted to enter the Order identified, but affirmatively asserts that the purported Order is null and void ab initio, as if it were never entered, because the Third District Court did not follow proper procedures for the enforcement of the Amended Supersedeas Bond, including without limitation proceeding to entertain Ross and Wagner's motion when it had never been served on either the court clerk or defendant, and denied defendant his due process rights by not providing him any notice that the court was considering ordering payment of the Amended Supersedeas Bond, and without allowing defendant to be meaningfully heard on the enforceability of the Amended Supersedeas Bond under the circumstances before the April 9, 2019 decision to order enforcement was made ex parte, such that under Utah governing law the purported Order re Enforcement of Supersedeas Surety Bond is itself null and void ab initio as if it were never entered, and therefore defendant denies.  As to whether the purported order, which is not a certified copy, is true and correct, defendant currently lacks any personal knowledge or information, and therefore denies for purposes of this answer to the extent it varies from the official order on record.

As to paragraph 23, defendant admits that the Third District Court attempted to enter the ex parte Order identified, but affirmatively asserts that the purported ex parte order is null and void as if it were never entered, because the Third District Court did not follow proper procedures and denied defendant his due process rights, including without limitation his right to

9

a fair and impartial tribunal in that Judge Kelly impermissibly judged his own case by ruling on

whether he personally had violated defendant's due process rights in issuing the April 9, 2019

Order re Enforcement and impermissibly defended his own judicial misconduct.  Furthermore,

defendant expressly and unequivocally denies that he was in contempt of the prior void ex parte

order to pay, since under Utah law one cannot be in contempt of a void order, and further that he

was entitled to challenge the void ex parte order before being obligated to pay anything pursuant

to it, as a matter of due process and as required by the open court provision of the Utah

Constitution found in Article I, section 11.  As to whether the purported order, which is not a

certified copy, is true and correct, defendant currently lacks any personal knowledge or

information, and therefore denies for purposes of this answer to the extent it may be contrary to

the official copy on record.

       As to paragraph 24, defendant admits that the Third District Court attempted to enter the

Order identified, but affirmatively asserts that the purported order is null and void ab initio as if

it were never entered, because the Third District Court did not follow proper procedures and

denied defendant his due process rights in issuing it, including without limitation his right to a

fair and impartial tribunal in that Judge Kelly impermissibly judged his own case by ruling on

whether he personally had violated defendant's due process rights in issuing the April 9, 2019

Order re Enforcement and impermissibly defended his own judicial misconduct.  Further,

defendant denies that the damages were as claimed because there never was any evidence that

Ross and Wagner had in fact incurred any attorney fees in relation to the alleged contempt or

otherwise, and that the Order was obtained by a fraud on the court by Ross and Wagner and their

legal counsel John Bogart, who refused to produce any evidence that Ross and Wagner had paid

any attorney fees, or any evidence that Ross and Wagner had any fee agreement with the

attorneys to actually pay for their time, or any evidence that the attorneys ever even charged

Ross and Wagner for their time, or that Ross and Wagner were otherwise obligated to pay them,

such that Ross and Wagner needed to be compensated for any actual attorney fees incurred,

which is a mandatory prerequisite for the awarding of any "attorney fees" as a sanction under

Utah law.  As such, defendant denies the purported order was valid and enforceable, and objects

to this Court taking any judicial notice thereof as if any attorney fees or damages did in fact

exist.  As to whether the purported order, which is not a certified copy, is true and correct,

defendant currently lacks any personal knowledge or information, and therefore denies for

purposes of this answer to the extent it is inconsistent with the official copy on record.

As to paragraph 25, defendant admits that he paid $31,300 to the Ross Case plaintiffs and

affirmatively asserts that such payment was payment in full of the entire July 2015 Judgment

amount, including all interest that the Ross Case Plaintiffs claimed was due and owing at that

time, and thereby satisfied any claimed obligation under the Amended Supersedeas Bond.

As to paragraph 26, defendant denies that $30,582.40 was paid for failing to follow the

void court orders, and that as a matter of settlement defendant paid $23,700, for a total of

$55,000 to settle all claims against defendant which were still being litigated, without conceding

any misconduct, and further denies any such misconduct, and further denies that the amount paid

in settlement was/is not attributable to the Debtor, which is not itself a factual allegation but a

conclusion of law, which defendant disputes and further affirmatively asserts that the settlement

amount was not only on behalf of defendants, but also on behalf of Debtor so that Ross and

Wagner would not pursue said funds from Debtor as theyh were threatening to do, as best as

defendant recalls at this time.

As to paragraph 27, defendant denies, and affirmatively asserts that the agreement between Debtor and defendant was that Debtor would repay all amounts attributable to the Amended Supersedeas Bond, including repaying any amount defendant was forced to pay pursuant to enforcement of the Bond, if defendant would post a surety bond with the district court, as is the customary practice in regards to sureties who only post such bonds based on the promise of the judgment debtor to repay the surety if the surety eventually has to pay out, and that securing such repayment obligation was the intent and purpose of contractual lien created by the Loan and Security Agreement.

As to paragraph 28, defendant denies, and affirmatively asserts that the oral agreement between Debtor and defendant was that pursuant to the Loan and Security Agreement Debtor would repay all amounts attributable to defending against enforcement of the Amended Supersedeas Bond, including without limitation defending against its unlawful enforcement when the conditions contained therein had not in fact been met, and when defendant's due process rights were violated, in that if such efforts by defendant were successful then Debtor would not have to repay defendant for paying out on the Amended Supersedeas Bond, so the defense against improper enforcement of the Amended Supersedeas Bond was for Debtor's ultimate benefit, and it would be inequitable for Debtor (the estate) to not pay for such efforts on Debtor's behalf.

As to paragraph 29, it is not an actual factual allegation that requires a denial, nevertheless defendant denies the Trustee's erroneous legal conclusion.

As to paragraph 30, the Loan and Security Agreement speaks for itself to the extent it

contains the agreement of the parties, and defendant denies any deviation therefrom or from the oral agreements of the parties in relation thereto.

As to paragraph 31, defendant is unaware of repeated requests and therefore denies. Furthermore, defendant denies that there was any payment of $40,000 to Debtor personally, since it was a lease of equipment to an LLC, so there would obviously not be any evidence of any payment to Debtor personally, because Debtor had merely agreed to personally guarantee payment of the lease until defendant recovered the full amount expended to purchase the equipment. Defendant affirmatively asserts that the Loan and Security Agreement was a substituted contract, which under Utah law replaces the original contract. Defendant further affirmatively asserts as the Trustee has been advised that the Loan and Security Agreement itself is a memorialization of the verbal obligations, and resolution of any claims existing at that time, as is allowed and enforceable under Utah law. Defendant further affirmatively asserts that the basis interest is statutory interest imposed as a matter of law at 10%, and the agreement of the parties that Debtor would pay interest.

As to paragraph 32, it is a legal argument and therefore does not require a response, nevertheless defendant denies that any evidence is required under Utah law to prove an obligation, and affirmatively states that the Loan and Security Agreement is a substituted contract which became the new obligation of Debtor from that point forward.

As to paragraph 33, defendant admits that the amount of $105,000 includes the so-called "principal" amount and interest at the rate of 10%. Defendant denies the Trustee's conclusion.

As to paragraph 34, once again this is not a factual allegation, but argument which does not require a denial, nevertheless defendant denies in that Utah law provides that unless an

agreement expressly prohibits interest, statutory interest is imposed at the rate of 10%, and the

parties orally agreed that interest would be owed, furthermore, the Loan and Security Agreement

is not an integrated contract and therefore oral agreement may be made in connection therewith.

As to paragraph 35, defendant denies the Trustee's unexplained assumption, and asserts

there is no overlap.

As to paragraph 36, defendant admits that Shurtleff is Mark Shurtleff.

As to paragraph 37, defendant denies in that Mr. Shurtleff has represented both Debtor

and defendant.

As to paragraph 38, defendant denies in that the obligation to pay for Mr. Shurtleff's

attorney fees arose pursuant to the Loan and Security Agreement as well as the verbal

agreements between the parties that Debtor would pay such fees pursuant thereto because the

defense against the unlawful enforcement of the Amended Supersedeas Bond was for Debtor's

benefit so that Debtor would not ultimately have to repay defendant for any amount paid out on

the Bond, as was their agreement.

As to paragraph 39, defendant properly asserted that such amounts were estimated and

did not limit such amounts to amounts paid but also includes amounts owing.  Since the

complaint has been filed, Mr. Shurtleff has provided his invoice in the amount of $14,395, which

invoice has been provided to Trustee.

As to paragraph 40, defendant denies, and affirmatively asserts that Debtor and defendant

had an affirmative oral agreement that the Loan and Security Agreement did in fact cover such

attorney fees, as allowed since the Loan and Security Agreement is not an integrated agreement.

and defendant relied upon said oral agreement in retaining Mr. Shurtleff as counsel.

As to paragraph 41, based on information and belief that such information has been given to Trustee, and it just does not meet Trustee's preferred theory of the case, defendant denies.

As to paragraph 42, is a legal conclusion which does not require an answer, nevertheless, defendant asserts that the Trustee is ignoring Utah law and the facts, due to a failure to adequately investigate the facts and the law, and therefore denies.

As to paragraph 43, 44, 45, and 46, the Trustee appears to be mistakenly assuming that the fees referred to are fees awarded to defendant, when the Claim is actually referring to the amount of fees purportedly, but unlawfully, awarded to Ross and Wagner against defendant, which amounts the Trustee is herself asserting exists in this complaint, and therefore Trustee has the information her Complaint claims she does not have.  Accordingly, defendant denies any allegations therein.

As to paragraph 47, defendant admits.

As to paragraph 48, defendant denies in that the Loan and Security Agreement is itself in effect the "promissory note" to the extent one may be required, and denies that a separate "promissory note" is even required since a lien can be created by contract under Utah law.

As to paragraph 49, it is believed that the Trustee was provided a copy of the UCC-1 filing perfecting the lien created by the Loan and Security Agreement generally as to the rest of the world, and if not, the Trustee could have easily investigated and found that there was in fact a UCC-1 filing perfecting the lien, and therefore defendant denies any assumption by the Trustee that the lien was not perfected, and affirmatively asserts that it was perfected by the filing of a UCC-1 filing, and further asserts that the Trustee could have, and should have, conducted her own search for the UCC-1 filing before filing suit, and further asserts that a lien is always

perfected as to the parties thereto under Utah law, and therefore regardless of any UCC-1 filing the contractual lien is "perfected" and binding between Debtor (the estate) and defendant.

As to paragraph 50, defendant believes that the Trustee was provided a copy of the UCC-1 filing and therefore denies, and further asserts that the Trustee could have, and should have, conducted her own search for the UCC-1 filing before filing suit, and further asserts that the Loan and Security Agreement itself is evidence of the contractual lien created thereby.

As to paragraph 51, defendant asserts that the term "valid security claim" is ambiguous and therefore denies, and further believes that trustee was provided a copy of the UCC-1 and therefore denies, and further asserts that the Trustee could have, and should have under Rule 11, conducted her own search for the UCC-1 filing before filing suit, and further asserts, contrary to Trustee's flawed assumption that a contractual lien may be created by contract and is binding between the parties without any need to perfect the security interest as to third parties.

As to paragraph 52, defendant denies and further denies any implication that a "promissory note" is required to create a contractual lien, and affirmatively asserts that the Loan and Security Agreement is itself a "promissory note" to the extent one is required in that it is a promise to pay, which is why it is called a "Loan … Agreement."

As to paragraph 53, defendant denies that there is "no property" that "secures the interest" since the pledge of collateral in the Loan and Security Agreement expressly pledges all of Debtor's property, then existing or thereafter acquired, which property at the time Debtor filed bankruptcy is now all of the assets in the bankruptcy estate.

As to paragraphs 54-57, defendant admits such funds are in the estate and expressly claims a secured interest in the funds and all other assets of the estate pursuant to the pledge of

16

collateral in the Loan and Security Agreement, and asserts that his lien has a higher priority than

any claim that the Trustee may make on the assets.

*As to paragraphs 58, to the extent necessary defendant incorporates all other responses,*

*and all affirmative representations and allegations in the counterclaims.*

As to paragraph 59, defendant denies that there is a legitimate legal or substantial good

faith controversy as to whether the Loan and Security Agreement is enforceable so as to warrant

judicial relief under the Declaratory Judgment Act, and that any claim of controversy is artificial

and contrived on the part of Trustee in order to seek to incur attorney fees for her own law firm.

As to paragraph 60, defendant denies the Loan and Security Agreement is unenforceable.

As to paragraph 61, defendant denies and affirmatively states that defendant bound

himself to act by entering into the Loan and Security Agreement, namely to post a surety bond

on behalf of Debtor, in exchange for the collateral provided both for such promise to post a

surety bond, and in exchange for the collateral to secure Debtor's prior obligations to him as

expressly recognized by the substitute contract, and further asserts that defendant's obligations

need not be expressly stated in the Loan and Security Agreement as Trustee assumes since the

Loan and Security Agreement is not an integrated agreement such that oral agreements may also

exist in relation thereto.

As to paragraph 62, defendant denies and affirmatively asserts that the promises given by

defendant in the Loan and Security Agreement to post a surety bond, as intended by the parties

thereto, form the obligation of defendant which creates the consideration given by defendant for

the promises of repayment by Debtor, and for the contractual lien created thereby, and further

asserts that all aspects of defendant's obligations need not be expressly stated in the Loan and

17

Security Agreement as Trustee appears to incorrectly assumes since the Loan and Security Agreement is not an integrated agreement such that oral agreements may also exist in relation thereto so as to clarify any ambiguities.

As to paragraph 63, defendant denies and asserts that not only was defendant's promise of posting a surety bond adequate consideration for Debtor's obligations under the Loan and Security Agreement when made, and the contractual lien created thereby, defendant did in fact perform as promised by posting the Supersedeas Bond and the Amended Supersedeas Bond, and provided yet further consideration by defending against the Third District Court's unlawful attempt to enforce the Amended Supersedeas Bond, and by eventually paying Ross and Wagner the 2015 Judgment in full with interest pursuant to their claims against the Bond, and that both actions were taken in reliance on the Loan and Security Agreement and the oral agreements with Debtor that the security interest negotiated for and provided by the Loan and Security Agreement would cover all such actions, and therefore did in fact provide consideration for the debt being claimed and for the contractual lien to secure it.

As to paragraph 64, defendant denies the Trustee is entitled to the declaratory judgment requested, and further expressly denies the bankruptcy court has jurisdiction to provide such relief under the Declaratory Judgment Act which does not confer the bankruptcy court any jurisdiction since it is merely remedial and Trustee has not demonstrated any independent basis for federal subject matter jurisdiction to hear this particular cause of action.

*As to paragraph 65, to the extent necessary defendant incorporates all other responses, and all affirmative representations and allegations in the affirmative defenses and the counterclaims.*

18

As to paragraph 66, defendant denies that there is a legitimate legal or substantial good faith controversy as to whether defendant has a security interest in the funds as provided by contractual lien expressly created by the Loan and Security Agreement, and asserts that the Trustee is contriving a controversy which does not in fact exist in order to seek to incur attorney fees for her own law firm.

As to paragraph 67, defendant admits he does have a secured interest in the Funds and denies the Trustee's claim that he does not, or that the Funds are wholly property of the bankruptcy estate not subject to his lien, which attached before Debtor filed Bankruptcy.

As to paragraph 68, this is a conclusory legal argument and therefore no response is required, defendant nevertheless denies.

As to paragraph 69, defendant denies Trustee's apparent legal assumption that there must be a separate "promissory note" from the Loan Agreement itself since the Agreement does in fact provide that Debtor "hereby agrees to repay all amounts owed to Raymond Short hereunder, or as may become owed hereunder, on such terms as the parties may agree dependent on Douglas Short's variable financial circumstances" and that is enough of an obligation to create a debt owed by Debtor, especially since defendant relied upon the agreement to repay and the pledge of collateral as security for such promise to repay.

As to paragraph 70, this is a conclusory legal argument and therefore no response is required, nevertheless defendant denies and affirmatively asserts "perfection" is irrelevant as to Trustee's claims since "perfection" is a concept as to priority between competing holders of security interests in the same collateral, and has nothing to do with whether the security interest has in fact attached and is therefore binding on Debtor (and Trustee standing in his stead), and

further, even if it were, the contractual lien created by the Loan and Security Agreement was in fact also perfected by the UCC-1 filing which gave notice to third parties.

As to paragraph 71, defendant denies that the Trustee is entitled to the judgment requested, and further expressly denies the Court has jurisdiction to provide such relief under the Declaratory Judgment Act which does not confer the bankruptcy court any jurisdiction since it is merely remedial and the Trustee has not demonstrated any independent basis for federal subject matter jurisdiction to hear this particular cause of action.

*As to paragraph 72, to the extent necessary defendant incorporates all other responses, and all affirmative representations and allegations in the affirmative defenses and counterclaims.*

As to paragraph 73, is a mere statement of the Trustee's position that requires no response, nevertheless defendant denies the Trustee's legal assertion that the Claim 3-2 is unsecured, but in the event it is held to be unsecured, in whole or part, he asserts that any unsecured portion of the Claim must still be recognized as an unsecured claim.

As to paragraph 74, the allegation is a mere statement as to the Trustee's position, to which no response is required, nevertheless defendant denies any merit to the Trustee's position and asserts that the Claim is enforceable against the Debtor.

As to paragraph 75, defendant denies and points out the Trustee's own complaint acknowledges that defendant has in fact made payments for the benefit of Debtor by paying the full amount of the 2015 Judgment to Ross and Wagner pursuant to their claims against the Amended Supersedeas Bond.

As to paragraph 76, defendant denies and notes that the Trustee has not identified any

amount of any alleged overstatement, and asserts that even if the Claim were found to be

overstated to any degree, that is not grounds for denying any amount of the claim which is found

to not be overstated.

As to paragraph 77, defendant denies there is any duplication and notes that the Trustee

has failed to identify any duplication in the Complaint.

*As to paragraph 78, to the extent necessary defendant incorporates all other response,*

*and all affirmative representations and allegations in the affirmative defenses and the*

*counterclaims s.*

As to paragraph 79, it merely states the Trustee's position and therefore does not require

an affirmative answer, nevertheless, defendant denies, and especially denies that Claim 3-2

should be subordinated to any untimely claim, in that untimely claims are by statute subordinated

to timely claims and there is no basis in the Code to allow the Trustee or the Court to subordinate

defendant's timely claim to any untimely claim.

As to paragraph 80, defendant admits he is Debtor's father, but denies that that

relationship in any manner alters the validity of defendant's claims, or the priority they should be

given, especially as relates to the Loan and Security Agreement entered into over 4 years before

Debtor filed his bankruptcy petition.

As to paragraph 81, defendant denies any inequitable conduct, and denies that the orders

were lawful as the Trustee summarily concludes without any supporting factual allegations in

violation of Twombly and Iqbal, and denies that he was in contempt because one cannot be in

contempt of a void order under Utah law as a matter of law, and further that the purported

finding of contempt was and is null and void ab initio because it was a denial of defendant's

21

federal due process rights since the Third District Court Judge who entered it was

constitutionally conflicted because defendant was challenging his denial of defendant's due

process rights and other judicial misconduct, and therefore the judge was judging his own case as

to the propriety of his own actions, in direct violation of defendant's federal due process rights to

a fair hearing before a fair and impartial tribunal, contrary to the US Supreme Court's ruling in

In re Murchison.  Defendant further denies the characterization of the award of the Ross Case

Plaintiffs' purported attorney fees as a penalty, and denies that the Ross Case Plaintiffs in fact

actually incurred any attorney fees, and affirmatively asserts that the Ross Case Plaintiffs and

their counsel committed a fraud on the court by seeking to recover purported "attorney fees"

which were never in fact incurred under Utah law which limits the authority of Utah courts to

award attorney fees as a sanction unless such fees have in fact been incurred and the party (not

the party's attorney) must be compensated for such fees actually incurred.  Defendant further

asserts that if the Trustee were to actually investigate the facts she would discover that the Ross

Case Plaintiffs never actually incurred any attorney fees as falsely claimed to both the Third

District Court, and in their proof of claim in these bankruptcy proceedings, and asserts that the

Trustee is obligated to fully investigate such facts before seeking to subordinate defendant's

claims to any claims by Ross, Wagner, and/or Bogart.

As to paragraph 82, defendant denies, and affirmatively asserts that he had no obligation

to pay under the Supersedeas Bond which was replaced and became moot, nor did he have any

obligation to pay because the conditions for any obligation to pay (which the Trustee fails to

acknowledge exists) never occurred.  Further, defendant did not merely wait, but was litigating

whether the order was lawful, and whether he had any obligation to pay, which is his

constitutional right as a matter of due process and a constitutional right under Utah's open court

provision in Article I, Section 11 of the Utah Constitution.

As to paragraph 83, defendant denies any injury to the Debtor, who was in full agreement

with his efforts to avoid the unlawful enforcement of the Amended Supersedeas Bond and

assumed the risk of any costs in order to try avoid any liability to repay the Bond; and denies any

injury to Debtor's legitimate creditors, caused by defendant properly defending and protecting

his rights in the Third District Court that would warrant equitably subordinating his entire Claim

(as compared to subordinating any alleged injury only), and indeed asserts that the Trustee is and

will be causing more damage to Debtor and his creditors by pursuing this adversary proceeding

than defendant is even alleged to have caused, namely $1,685.90 in interest, if the Trustee

intends to take any portion of the Funds to pay her own law firm for bringing this case such that

the Funds will thereby not be available to be distributed to the creditors; and further denies that

defendant's assertion of his constitutional rights in the Third District Court is inequitable conduct

as alleged, and asserts the Court may not punish the exercise of defendant's constitutional rights

without thereby denying defendant his constitutional rights; and further denies that his claim

should be subordinated to the untimely claims of Ross and Wagner and Bogart, whose claims are

themselves inequitable (such that they have unclean hands) because of their fraud on the Third

District Court and on this Court in that their impermissibly combined proof of claim asserts that

Ross and Wagner and Bogart incurred actual damages in the form of attorney fees supposedly

incurred when in fact no attorney fees were ever paid by them or incurred under Utah law which

only recognizes attorney fees as being incurred when they are paid or the party is legally

obligated to pay them, and there has never been any proof in Third District Court or with their

improperly combined Claim, or otherwise in these bankruptcy proceedings, that any attorney fees were ever so incurred.  Defendant further affirmatively asserts that as a matter of equity the Trustee is obligated to fully investigate whether any attorney fees were in fact incurred according to Utah law by Ross, Wagner and Bogart such that them may make a claim to be compensated for such claims, and whether they have any proof of any such fees actually being incurred, in that it would be inequitable for the Trustee to play favorites between creditors by applying a double standard by asserting that defendant lacks proof of his claim, while ignoring the fact that Ross, Wagner and Bogart lack any proof of any actual harm by Debtor in the form of attorney fees actually incurred.

As to the Trustee's Prayer for Relief, defendant denies the Trustee's entitlement to the relief requested, in particular the Trustee has not presented any basis for any claim for attorney fees under the circumstances, and therefore any such claim is a violation of Rule 11 and a violation of the Trustee's duties.

Defendant hereby further denies all allegations not expressly admitted above, including in particular any and all of the Trustee's summary arguments and conclusions made contrary to Twombly and Iqbal.

**FOURTH DEFENSE**

**Failure to Join an Indispensable Party**

Defendant hereby asserts that the Trustee has failed to join an indispensable party by failing to join Debtor.  While the Trustee may represent the assets in the estate, the Trustee does not represent the Debtor personally, or his interests in these matters, and Debtor claims interests relating to the subject of the declaratory judgment actions the Trustee is pursuing, and the

priority to be given to defendant's Claim 3-2, and the disposing of those declaratory judgments

in his absence will impair Debtor's ability to protect his interests, which interests include without

limitation his desire to have his good faith contractual obligations and commitments honored

when they have been relied upon by defendant so that Debtor will not have to subsequently

honor them after the bankruptcy (even if such contractual obligations are technically discharged)

due to his moral obligations, especially since Debtor filed bankruptcy with the reasonable and

proper expectation that his lawful contractual obligations would in fact be honored by the

Trustee.

**FIFTH DEFENSE**

**Inequitable Treatment of Claims**

Trustee's actions should be denied in whole or in part due to the Trustee's inequitable

treatment of the claims of the creditors by applying a more stringent scrutiny to defendant's

Proof of Claim 3-2 than she is applying to the impermissibly combined Proof of Claim of Ross,

Wagner and Bogart.  In particular the Trustee has failed to adequately investigate the

impermissibly combined claims of  Ross, Wagner and Bogart for any proof that they ever

actually incurred any attorney fees as claimed, and whether they in fact ever actually incurred

any attorney fees as a result of Debtor's actions or defendant's actions, or did they commit a

fraud upon the Third District Court by claiming attorney fees which did not in fact exist,

rendering their purported court orders null and void ab initio.  The Trustee also has not

adequately investigated whether Ross, Wagner and/or Bogart are claiming non-existent damages

in this case in the form of attorney fees which do not in fact exist, and have thereby filed a false

proof of claim, but is instead apparently summarily assuming that their claim is valid without any

25

supporting evidence such as any proof of any payment of such fees, or any agreement to pay

such fees, and so on.

## SIXTH DEFENSE

### Breach of Trustee's Duty to Adequately Investigate

Trustee's actions should be denied in whole or in part due to the Trustee's failure to meet

her duty as a trustee to adequately investigate the facts as required by the United States Trustee

Program's Handbook for Chapter 7 Trustees, before turning the issues raised over to her own law

firm, so as to incur attorney fees by her firm doing the Trustee's job for which no fees may be

awarded; and due to the failure of Trustee and her law firm to comply with the affirmative duty

to adequately investigate both the facts and the law as required by Rule 11 of the Federal Rules

of Civil Procedure, made applicable to these proceedings by Rule 9011, before filing this

adversary proceeding, such that the actions should be struck as a sanction, and defendant should

be awarded any fees, costs, expenses, incurred and compensation for time expended defending

his Claim against these proceedings.

## SEVENTH DEFENSE

### The 2015 Judgment is now owned by Defendant

Defendant's Claim 3-2 cannot be subordinated to any Claim by Ross, Wagner and Bogart

(which are untimely) based on the 2015 Judgment against Debtor because defendant has now

paid that 2015 Judgment in full to Ross and Wagner pursuant to the Amended Supersedeas

Bond.  Under the plain language of UCA 78B-5-810, defendant has been automatically

subrogated to Ross and Wagner's claimed interest in that 2015 Judgement, replacing Ross and

Wagner, and now has the exclusive right to control, enforce, and satisfy the 2015 Judgment

against Debtor (and the estate) in all respects as if defendant had originally obtained the 2015 Judgment in his own name.  The former Judgment Creditors Ross and Wagner therefore as a matter of law no longer have any interest in the 2015 Judgment, (rendering their Claim for such amounts moot and/or false), and the Trustee is obligated as a matter of law to recognize defendant as the current Judgment Creditor of the 2015 Judgment against Debtor.  And since Trustee is not disputing the 2015 Judgment, herein or elsewhere, she is obligated to distribute funds from the estate to defendant to satisfy such Judgment, and to not distribute any funds from the estate to claimants Ross and Wagner based on their claims asserting any right to be paid for the 2015 Judgment; and further the Trustee cannot subordinate defendant's claim as the current judgment creditor entitled to payment of the 2015 Judgment to the claims of Ross, Wagner as to the 2015 Judgment since they having already been paid in full on such claim by defendant.

## EIGHTH DEFENSE

### Settlement, Substituted Contract, and any similar theory

The Trustee is bound by the Loan and Security Agreement as a settlement and substituted contract between Debtor and defendant as to any obligation by Debtor had to defendant at that time arising from Debtor's agreement to personally guarantee repayment of the funds provided by defendant to the LLC through the lease, as expressly stated in the Loan and Security Agreement to be at least $40,000 at the time of the Agreement, plus statutory interest at the rate of 10%.

## NINTH DEFENSE

### Estoppel

The Trustee's actions challenging the Debtor's obligations under the Loan and Security

Agreement are estopped in that the Trustee is standing in the stead of the Debtor and the Debtor

is estopped from challenging any obligation Debtor has to defendant under the Loan and Security

Agreement because defendant has reasonably relied thereon and performed in accordance with

the agreements between the parties, with Debtor's full knowledge and consent.

Further the Trustee herself is barred by estoppel for not challenging the Loan and

Security Agreement earlier before defendant relied thereon and paid the 2015 Judgment, and for

not challenging Ross and Wagner's motion to lift the stay so as to allow them to seek payment of

the 2015 Judgment pursuant to the Amended Supersedeas Bond, knowing by virtue of Debtor's

filings and the 341 hearing that defendant would claim a lien on all of the assets in the estate for

repayment thereof; and it would be inequitable for the Trustee to not treat all creditors equally by

effectively requiring defendant to pay part of the estate's alleged obligation to Ross and Wagner

by paying them for the 2015 Judgment, only to then not "reimburse" defendant for paying part of

the estate's alleged obligation to pay the 2025 Judgment; especially when the Trustee had been

previously informed of the Loan and Security Agreement by Debtor through his schedules and

the 341 hearing.

Trustee is further estopped from equitably subordinating defendant's Claim to the

unsubstantiated claims of Ross, Wagner and Bogart that they were supposedly damaged because

they supposedly incurred attorney fees as a result of Debtor's actions, when in fact there has not

been any proof submitted with their claim that they had been damaged by actually incurring any

attorney fees, and the trustee has not investigated their claims with equal attention and vigor,

despite being put on notice that their claims are in fact false. Such an investigation would reveal

their inequitable conduct in the dispute in state court, and their unclean hands, which if left

unchallenged by the Trustee will injure defendant as a creditor of Debtor, Debtor himself, and all of the other creditors who have submitted a proof of claim to the extent their claims may receive less.  Furthermore, Trustee has not adequately investigated whether the order enforcing the Amended Supersedeas Bond was lawful or not, because if she did she would discover that the Order was and is null and void because Ross, Wagner and Bogart in fact caused defendant's due process rights to be denied, made knowingly false factual representation to the state district court to get the Amended Supersedeas Bond enforced ex parte, made false statements in their pursuit of fees for enforcing the Bond Order, and so on, such that it was actually their own misconduct which caused defendant to have to defend himself and Debtor, and incur the additional amounts awarded to them, which would not have been but for their misconduct.

### TENTH DEFENSE

### Fraud on the Court by Ross, Wagner and Bogart

Any attempt by the Trustee to equitably subordinate defendant's Claim 3-2 to any claim by Ross, Wagner and Bogart is barred by virtue of the fact, on information and belief which will require discovery, that in each situation in state court where Ross, Wagner and Bogart sought sanctions against Debtor they affirmatively claimed that they had incurred attorney fees that they needed to be compensated for by the awarding of such attorney fees as sanctions, when in fact they had not incurred any attorney fees as a result of any action by Debtor in that they had not paid any such attorney fees or become legally obligated to pay any such attorney fees as a result of Debtor's or defendant's actions, and never produced any evidence of such fees, such that they obtained the purported sanctions by a knowing and intentional fraud on the court, rendering all such claims by Ross, Wagner and/or Bogart null and void ab initio.  The Court and the Trustee

cannot subordinate defendant's Claim to any claim of Ross, Wagner and/or Bogart based on null and void orders/judgments.

## ELEVENTH DEFENSE

### Null and Void Orders in favor of Ross, Wagner or Bogart

### Due to denial of due process and the denial of the right to an open court

Any attempt by the Trustee to equitably subordinate defendant's Claim 3-2 to any claim by Ross, Wagner and/or Bogart is barred by virtue of the fact, on information and belief which will require discovery, that in each situation where Ross, Wagner and Bogart sought sanctions against Debtor, Debtor was denied his rights to due process and his rights under Article I, Section 11 of the Utah Constitution to an open court to challenge improvidently issued orders of the Third District Court or the Court of Appeals, and therefore all such orders and or judgments are null and void under Utah law, rendering all such claims by Ross, Wagner and/or Bogart null and void ab initio, such that the Court and the Trustee cannot subordinate defendant's Claim to any claim by Ross, Wagner and/or Bogart based on null and void orders/judgments, and must instead deny them.  Likewise, the fraud on the court by Ross, Wagner and Bogart as to any attempt to be awarded on non-existent attorney fees rendered the resulting orders null and void.

## TWELFTH DEFENSE

### Laches

Any action by the Trustee standing in the stead of Debtor to challenge the Loan and Security Agreement is barred by laches in that Debtor did not challenge the validity of the Loan and Security Agreement for over 4 years before he filed his bankruptcy petition, and defendant relied on the validity of the Agreement by posting the Amended Supersedeas Bond in the Third

District Court, thereby committing himself contractually under the terms thereof.

Further the Trustee herself is barred by laches for not challenging the Loan and Security Agreement earlier before defendant relied thereon and paid the 2015 Judgment, and for not challenging Ross and Wagner's motion to lift the stay so as to allow them to seek payment of the 2015 Judgment pursuant to the Amended Supersedeas Bond knowing that defendant would claim a lien on all of the assets in the estate therefore, because the Trustee had been informed of the Loan and Security Agreement by Debtor through his filing and the 341 hearing, and by virtue of Debtor's opposition to lifting or modifying the stay, in which the Trustee should have joined.

## THIRTEENTH DEFENSE

### Violation of Automatic Stay

The trustee's actions are barred in whole or in part as relates to any payment by defendant of the 2015 Judgment or any purported sanctions related to the Amended Supersedeas Bond, because the payments were the result of a violation of the automatic stay by ross, Wagner and their counsel Bogart and Egan, notwithstanding the Court's flawed interpretation of the statutory interpretation of the automatic stay provisions, (which flawed ruling does not excuse any violation of the stay), which violation has adversely affected the estate, as now demonstrated by this adversary proceeding.  The Trustee was obligated to seek to enforce the automatic stay and failed to do so, and therefore should bear the burden of any adverse impact on the estate caused by the Trustee not performing its duty, not defendant.

## FOURTEENTH DEFENSE

## Waiver

The Trustee's actions are barred in whole or in part due to the waiver of any timely challenge to the Loan and Security Agreement for lack of consideration or any other alleged deficiency.

### FIFTEENTH DEFENSE

### Null and void orders

The trustee's actions must be denied in whole or in part because she cannot prove at trial, that each of the state court orders she relies on is in fact a lawful order/judgment, because she cannot affirmatively prove that the court which issued it had all of the required jurisdictions to issue it, and that the court had provided Debtor due process in issuing it or recognized his constitutional right to an open court to challenge the court's ruling, and the denials of his constitutional right to an appeal under the Utah Constitution.  As such, the Trustee will not be able to meet her affirmative burden of proving that each order/judgment relied upon is not null and void under Utah law for lack of due process and/or lack of jurisdiction, or any other constitutional infirmity.

### SIXTEETH DEFENSE

### Unjust Enrichment

Trustee's claims against defendant should be barred in whole or in part in that Debtor and the bankruptcy estate has been benefitted from defendant paying Ross and Wagner the full amount of the 2015 Judgment, Debtor and the Trustee knew of the benefit they were receiving from defendant such that it would now be inequitable and unjust for the Trustee and estate to retain the benefit of such payment without paying defendant therefore.

## ADDITIONAL DEFENSES

Defendant hereby reserves his right to assert further defenses as may be determined would be beneficial to his claims.

## PRAYER FOR RELIEF

Defendant accordingly prays that the Trustee's claims and positions all be denied, and that he be awarded full judgment in his favor, and that he be awarded his expenses, costs and attorney fees under 28 US Code 2412 and/or UCA 78B-5-825, and/or on any other basis allowed as may be appropriate.

## COUNTERCLAIMS

Defendant hereby asserts Counterclaims as follows:

## DEMAND FOR JURY TRIAL

Defendant hereby demands a jury trial on all matters set forth in these Counterclaims which are required to be heard by a jury, or may be heard by a jury, and expressly objects to the Bankruptcy Court hearing such Counterclaims or conducting any jury trial, but must assert them in response to the Trustee's claims in the Bankruptcy Court at this time.

## PARTIES

1. The Trustee claims to be the duly appointed Chapter 7 Trustee of Debtor's bankruptcy estate.

2. Yan Ross is an individual who was a plaintiff in the Ross Case, who has appeared in this Court to file Proof of Claim 7, and is believed to be living in Arizona.

3.  John Bogart is an individual who was counsel for Yand Ross and Randi Wagner in the Ross Case, and represented himself in the case captioned Short v. Bogart et al., and has appeared in this Court to file his Proof of Claim 6, and is believed to be living in Italy while still maintaining his law license in Utah and an office in Salt Lake County (referred to collectively with Telos Ventures Groups PLLC as "Bogart").

4.  Telos Ventures Group PLLC is a law firm organized in the State of Utah, and is believed to have an office in Salt Lake County, and has conducted business in Salt Lake County by filing proofs of claim in these bankruptcy proceeding on its own behalf, on behalf of John Bogart, and on behalf of Yan Ross.

## JURISDICTION AND VENUE

5.  The Bankruptcy Court has jurisdiction over this adversary proceeding as to the core proceedings, but lack original jurisdiction as to any other claims, in particular the declaratory judgment actions, but at present the case is referred to the Bankruptcy Court.

6.  Venue of this Adversary Proceeding is the District Court for the State of Utah.

## FACTS

7.  All of the facts which have been admitted or asserted by defendant previously in his answer are hereby incorporated as if fully set forth here as to all counterclaims, and such facts and allegations as to each Counterclaim is incorporated by reference as may be relevant to each other Counterclaim.

## FIRST COUNTERCLAIM

### (Defendant's Subrogation to 2015 Judgment)

8.  Ross and his wife Randi Wagner obtained a purported "judgment" against Debtor, herein

referred to as the 2015 Judgment.

9.  Defendant posted an Amended Supersedeas Bond on behalf of Debtor in the Ross Case in order to stay any collection activity against Debtor by Ross and Wagner pending appeal of the 2015 Judgment.

10. After the appeal of the 2015 Judgment was dismissed, Ross and Wagner brought a motion to enforce the Amended Supersedeas Bond.

11. Ross and Wagner (and their counsel Bogart) did not serve defendant a copy of the motion to enforce the Bond as required under the Utah Rules of Civil Procedure, and as a matter of due process which requires adequate notice a matter is being considered before a decision is made.

12. Ross and Wagner (and their counsel Bogart) deliberately misrepresented to the court that the motion had been served on all counsel and all parties.

13. Judge Kelly of the Third District Court entertained the motion ex parte because defendant had not responded due to the lack of notice, and summarily granted it, mechanically signing the proposed order prepared by Bogart which misrepresented that all of the conditions of the Amended Supersedeas Bond had in fact been satisfied, without actually identifying what they were.

14. In fact, all of the conditions had not in fact been satisfied, in particular, the Amended Supersedeas Bond in relevant part required defendant: "to pay Plaintiffs all the damages, costs, an interest awarded them in the Order and the [2015] Judgment, together with such costs and interest as may be occasioned by the appeal, up to the maximum sum of $30,000, **if** a. the Order and the Judgment are **<u>affirmed on appeal</u>**, or the appeal is

otherwise dismissed **on the merits**; and …"

15. The 2015 Judgment was neither affirmed on appeal, or dismissed on the merits, because it was dismissed as untimely by the Court of Appeals holding that it lacked any appellate jurisdiction to hear the appeal.

16. The conditions for the payment of the Amended Supersedeas Bond therefore in fact never happened, and defendant was not in fact contractually obligated to pay for the judgment notwithstanding Trustee's unsupported assumptions he was.

17. When defendant learned the Court had entered the order to enforce the Bond, he challenged it, asserting among other grounds that Judge Kelly had denied him due process by proceeding ex parte.

18. Judge Kelly impermissibly judged his own case as to whether he had personally violated defendant's due process rights, in direct violation of defendant's federal due process rights to have a fair and impartial tribunal free of any appearance of impropriety, impermissibly defended his own actions and found he had not denied defendant his rights to due process.

19. While the questions regarding defendant's purported obligations, including claims of contempt for violating the null and void order enforcing the Bond, were still being litigated, and Debtor filed the present bankruptcy case.

20. The attempts by Ross and Wagner to enforce the Bond were stayed until the Court modified the stay to allow Ross and Wagner to resume their efforts to collect the 2015 Judgment against defendant as the surety.

21. Rather than continue to fight in front of the conflicted judge, defendant paid the full

amount of the judgment at that time, including interest as calculated by Ross and Wagner, by means of a check dated 06/13/2020, in the amount of $31,300, a copy of which is attached to defendant's Proof of Claim, which is attached to the Complaint as Exhibit 1. See also Notice of Surety's Payment of 2015 Judgment Against Douglas R. Short to "Yan Ross and Randi Wagner, also attached to defendant's Proof of Claim.

22. Ross and Wagner have in fact been paid in full for the 2015 Judgment, and no longer have any interest in the 2015 Judgment, or any valid claim to be paid therefore from the estate.

23. By virtue of the payment of the entire amount of the 2015 plus interest, defendant under UCA 78B-5-810 automatically became subrogated to the positions of Ross and Wagner as the judgment creditors, so as to become the new judgment creditor entitled to control, enforce, and satisfy the 2015 Judgment against Debtor (and the estate) in all respects as if defendant had originally obtained the judgment in his own name.

24. Trustee is now obligated to pay defendant for the 2015 Judgment.

25. Trustee is now obligated to object to and disallow Ross' untimely claim seeking to be paid $8,980.92 on the 2015 Judgment.  See Proof of Claim 7.

### SECOND COUNTERCLAIM

### (Valid Loan and Security Agreement)

26. Debtor approached defendant in the fall of 2015 and asked him to post a surety bond on his behalf in order to stop the attempts by Ross and Wagner to collect the purported 2015 Judgment, which attempts were interfering with his law practice.

27. Defendant was only willing to do so if he could have a security interest in all of Debtor's

assets, then existing or thereafter acquired, to secure both the outstanding amount Debtor

still owed defendant for an equipment lease agreement between defendant and Priority

Press and Marketing LLC, for which Lease defendant had expended in excess of $40,000,

which Debtor had promised to personally ensure repayment to defendant in order to

induce defendant to purchase the equipment and lease it to Priority Press.

28. Defendant was also only willing to post a surety bond on behalf of Debtor if Debtor

promised to pay all sums related thereto, including any possible payout, any costs and

expenses etc. such that Debtor would make him whole regardless of what happened, and

that said obligation would also be secured by all of Debtor's property, then existing or

thereafter acquired.

29. Debtor and defendant therefore entered into an agreement whereby Debtor and defendant

entered into a substituted contract, the Loan and Security Agreement, memorializing the

parties' agreement as to what was then owed in relation to the Priority Press Lease,

whereby Debtor agreed to pay the new reconciled amount of $40,000 in relation to the

Lease, and whereby Debtor agreed to pay defendant for any and all amounts defendant

might have to pay in relation to the promised surety bond so as to fully indemnify

defendant and make him whole regardless of what might happen.

30. The parties further agreed that in order to secure defendant in relation to Debtor's

obligations to him, Debtor would pledge all of his property, then existing or thereafter

acquired, as collateral, and memorialized that agreement by creating a contractual lien in

the Loan and Security Agreement.

31. The parties further expressly agreed that in exchange for such promises to pay by Debtor,

and the pledging of all of Debtor's property to secure such promises, that defendant

promised to post a surety bond on Debtor's behalf, as reflected in the Loan and Security

Agreement.

32. Defendant did in fact post a surety bond as promised, which was amended as the

Amended Supersedeas Bond, and therefore did in fact honor his promise.

33. As such, value was given by defendant for the contractual lien created by the Loan and

Security Agreement.

34. The Loan and Security Agreement expressly identified the property to be pledged as

collateral, namely all of Debtor's personal property, then existing or thereafter acquired,

including without limitation all future payments of any legal fees, such as the Funds at

issue currently being held by Trustee.

35. Debtor has rights in all of his personal property, then existing or thereafter acquired.

36. Debtor in fact authenticated the Loan and Security Agreement by signing it.

37. Accordingly, the contractual lien attached to all of Debtor's property then existing, and

all property thereafter acquired, and became immediately binding between Debtor and

defendant, and immediately enforceable against the Debtor, as provided in UCA 70A-9a-

203(1) and (2).

38. As the Ross Case progressed, and Ross and Wagner improperly attempted to enforce the

Amended Supersedeas Bond when the conditions had not been met and the Court

rendered it nuill and void enforcement order, Debtor and defendant on several occasions

discussed what to do and jointly decided that defendant should challenge the null and

void order since a defeat of the enforcement order would mean the defendant would not

have to pay on the Bond, and Debtor would not have to repay defendant per the Loan and

Security Agreement, and that Debtor would assist and pay for the defense pursuant to the

Loan and Security Agreement, such that such expenses would likewise be secured by the

contractual lien created therein.

39. Such oral agreements and modifications are allowed under Utah law because the Loan

and Security Agreement is not an integrated contract containing all of the parties'

agreements and promises.

40. Trustee and the Court is accordingly obligated to allow defendant's claim in full, and to

recognize the contractual lien attached to all of Debtor's property in the bankruptcy

estate, and that said contractual lien has priority over any interest of the Trustee in the

estate, or any interest or claim of any other creditor.

## THIRD COUNTERCLAIM

### (Unjust Enrichment)

41. Debtor and the estate have received a benefit from defendant paying the full amount of

the 2015 Judgment, plus interest, to Ross and Wagner.

42. Debtor and the Trustee on behalf of the estate were aware of the benefit beign conferred

on Debtor and the estate being conveyed by virtue of the Bankruptcy Court's decision to

allow Ross and Wagner to resume their efforts to have the 2015 Judgment paid to them.

43. It would be unjust if the Trustee and estate were allowed to receive that substantial

benefit without reimbursing defendant in full therefore.

## FOURTH COUNTERCLAIM

### (Objection to Claim 7 – Fraud on the Court)

**(Yan Ross)**

44. Each and every time Ross and Wagner sought sanctions against Debtor in the Ross Case, they asked to have the Court award attorney fees, supposedly to compensate them for attorney fees incurred, but each and every time they did not in fact claim that they had actually paid any attorney fees, or were obligated to pay and attorney fees, and never provided any evidence of actual payments for which they needed to be compensated, or any evidence of any contractual obligation, such as an engagement agreement, and in fact it is believed that no such evidence exists because as discovery will likely prove, Ross and Wanger did not in fact actually incur any attorney fees.

45. Utah law only allows the awarding of attorney fees as a sanction in order actually compensate a party for fees actually incurred, and therefore if fees were not incurred, even if legal work were performed, there could not be an award of attorney fees as a sanction.

46. Ross and Wagner were aware of this through their counsel Bogart, and yet they intentionally misled the Court by submitting declarations of time that attorneys had spent on their behalf while carefully avoiding disclosing to the court that they had not actually paid the attorneys for such time, and did not in fact owe the attorneys for such time.

47. Bogart, as counsel for Ross and Wagner, was actually pursuing such fees for his own benefit (and for the benefit of Sean Egan whom he had hired to assist him) and not for the benefit of Ross and Wagner.

48. As such Ross and Wagner and Bogart committed a fraud on the Court, which renders the various orders/judgments null and void ab initio under Utah law, such that Ross in fact

41

does not have a valid claim to support his proof of claim.

49. Claim 7 therefore must be disallowed in its entirety because it is based on null and void

orders, and Ross has not in fact actually suffered any damages because he has never paid

any attorney fees or incurred any obligation to do so.

## FIFTH COUNTERCLAIM

### (Objection to Claim 7 – Untimely Filed)

### (Yan Ross)

50. The deadline for filing proofs of claim was June 23, 2000, according to the Trustee.

51. Claim 7 was not filed until September 18, 2020, and is therefore untimely.

52. Claim 7 must therefore not be allowed, or at least not be allowed unless and until all of

defendant's Claim has been paid in full, as well as the other timely filed proofs of claim

have been paid in full.

## SIXTH COUNTERCLAIM

### (Equitable Subordination of Claim 7)

### (Yan Ross)

53. Given the various frauds on the court in obtaining the various sanction orders/judgment,

in that Ross and Wagner never actually incurred any fees to be compensated for as

required for attorney fees to be awarded as a sanction, and inasmuch as Ross and his

counsel withheld that critical factual information from the court, Ross has unclean hands.

54. Ross further has unclean hands in his deliberate attempt to get an order of enforcement

entered ex parte, without giving actual notice to defendant so that he could be

meaningfully heard, even though he had defendant's mailing address and could have

easily served him, and he and his counsel objected to the court setting aside the null and

void Order and simply allowing defendant to be heard on the motion.

55. It would therefore be equitable if Claim 7 is allowed in any part over the objection thereto

above, that any allowed portion be subordinated to any and all claims by defendant and

any other creditor.

## SEVENTH COUNTERCLAIM

### (Objection to Claim 6 – Null and Void Order of Unauthorized Court)

### (John Bogart and Telos VG)

56. John Bogart (and his firm Telos Ventures Group PLLC) has brought his own proof of

claim 6 seeking payment of $16,752.86 for a purported order/judgment entered in his

own name by the Fourth District Court by Judge Brady on May 18, 2020, in the case

captioned Short v. Bogart, Telos Ventures Group PLLC, et al, case number 190401332,

which was originally filed in the Third District Court case number 190905217, which was

the only court where venue was proper under the Utah venue statutes.

57. Despite the fact the case was properly filed in the Third District Court, and there was no

motion to transfer venue, under either UCA 78B-3-309 or Rule 42(c) of the Utah Rules of

Civil Procedure, and despite not having any statutory authority to do so, the presiding

judge of the Third District Court, the Honorable Mark Kouris decided sua sponte to

transfer the case to the Fourth District Court.

58. The unlawful transfer was null and void ab initio since Debtor was not given any due

process to be heard on whether the case could or should be transferred because of the sua

sponte decision to transfer, and because a presiding judge lacks any statutory authority to

transfer a case which is not actually assigned to the presiding judge.  Accordingly, the

case was not in fact transferred so as to transfer any subject matter jurisdiction over the

case to the Fourth District Court.

59. The Fourth District Court also lacked any jurisdiction because the according to Utah case

law and the statutes which create the separate districts and the venue statutes which only

allow the various districts to hear the claims arising within their respective territories, the

venue statutes are jurisdictional limitations.

60. The Fourth District Court also lacked any personal jurisdiction over Debtor personally

since he was never summoned to appear and defend himself in the Fourth District, and

that is the only way a district court in Utah may gain personal jurisdiction since being

summoned to one district cannot create any personal jurisdiction in another district.

61. Therefore, the Fourth District Court's purported judgment is null and void ab initio as if it

were never entered due to the lack of subject matter, territorial and personal jurisdiction,

and under Utah law it has not created any rights in Bogart to be paid any amount.

62. Therefore, the null and void Claim 6 must be disallowed in its entirety.

**EIGHTH COUNTERCLAIM**

**(Objection Claim 6 – Untimely Filed)**

**(John Bogart and Telos VG)**

63. The deadline for filing proofs of claim was June 23, 2000, according to the Trustee.

64. Bogart's Claim 6 also was not filed until September 18, 2020, and is therefore untimely.

65. Bogart's Claim 6 must therefore not be allowed, or at least not be allowed unless and

until all of defendant's Claim has been paid in full, as well as the other timely filed proofs

of claim have been paid in full.

## NINTH COUNTERCLAIM

### (Objection Claim 6 – Null and Void Order Fraud on the Court)

### (John Bogart and Telos VG)

66. Just as above, Bogart sought sanctions awarding attorney fees when in fact he had not actually incurred any fees by payment or by agreement to pay, as discovery will likely confirm, (in fact, Bogart was attempting to collect fees for representing himself pro se despite the fact that is not allowed under Utah law) and despite being fully aware of the governing law misled the court into believing he had actual fees, despite not providing any claim or evidence that he had in fact paid any attorney fees, or entered into any fee agreement legally binding him to pay such fees.

67. Bogart's actions in crafting his requests so as to give the impression that fees were incurred when they in fact had not been were intentionally deceptive, and therefore constituted a fraud on the court, which renders the purported judgment null and void ab initio such that Bogart lacks any valid claim for payment.

68. Bogart's Claim 6 must therefore be disallowed.

## TENTH COUNTERCLAIM

### (Objection Claim 6 – Null and Void Loss of Jurisdiction)

### (John Bogart and Telos VG)

69. To the extent the Fourth District Court could have possibly had any jurisdiction over the Third District Court Case of Short v. Bogart et al, the trial court loss any jurisdiction to enter the purported judgment because it had actually dismissed the case in its entirety,

and the time to consider a post-judgment had expired, such that all of the court's actions

were taken after its potential jurisdiction had lapsed.

70. Therefore the null and void claim 6 must be disallowed in its entirety.

## ELEVENTH COUNTERCLAIM

### (Declaratory Judgement re Trustee Conflict of Interest)

71. Trustee has hired her own firm, GreenbergTraurig, LLP, including herself, to represent

her as Trustee in this adversary proceeding, (and in other matters), and she has in fact

appeared as counsel of record in this case as her own counsel.

72. The Trustee at the deposition of defendant affirmatively asserted that she always hires her

own firm, and that she always appears as her own counsel.

73. Trustee at the deposition of defendant also acknowledged that she is Carson Heninger's

supervisor as well as the designated officer of his actual client, the U.S. Trustee's Office.

74. It is maintained that having one's client also be one's supervisor upon whom Mr.

Heninger is dependent for his job security creates an unacceptable conflict that inherently

impairs Mr. Heninger's duty to be independent in representing the Trustee, and by

extension the U.S. Trustee on whose behalf Ms. Hunt is serving, as required by Rule 5.4

of the Rules of Professional Conduct in that having one's client also be one's boss creates

a substantial risk of interference with the lawyer's "professional independence of

judgment" in that Mr. Heninger cannot likely tell Ms. Hunt the client what he

independently thinks Ms. Hunt as his supervisor wants him to see it a certain way.

75. The Trustee has similar inherent and inescapable pressures from her employer to use her

discretion to bring in fees to the Firm in order to keep the firm happy with her enough to

retain her, and that if she did not bring in enough fees she would be let go.

76. Indeed, it is maintained that even in responding to this Counterclaim the Trustee cannot get truly independent legal advice from her counsel in this case, as is critical given her office of trust and duty to the integrity of the U.S. Trustee system, since her firm and lawyers have a conflicting financial interest in her continuing to hire her own firm, and would likely not advise her to hire stop her present practice of always hiring her own firm, and therefore Rule 1.7(a)(2)'s provision that there cannot be a significant risk that the representation will be materially limited by the lawyer's own interests is triggered.

77. It is respectfully believed that Ms. Hunt was hired by Greenberg Truarig specifically because she could and would then use her official position as a trustee to direct billable work to the firm when there were adequate resources in the estate to pay such fees, and that but for such anticipated work and fees, Ms. Hunt would not have been hired by her firm, and would not be retained by her firm, given the minimal fees a trustee typically earns by simply doing his or her job.  If this is in fact the case, then Ms. Hunt would be improperly benefiting personally by hiring her firm for this case and others in order to get and keep her employment.

78. Many trustees will not hire their own firms to represent them because of the inherent conflicts in doing so.

79. It is believed that the only reason the Trustee has brought this particular adversary proceeding is in order to defeat defendant's lien so that the substantial amount of Funds on hand can then be applied to attorney fees to her own firm instead of distributing the Funds to defendant, given that such administrative fees have priority over unsecured

creditors, and that if there were not a substantial amount of funds on hand to pay her own

firm that she would not have used her trustee powers to challenge defendant's claims or

lien.

80. Accordingly, it is respectfully requested that the Court declare that the current

arrangement of Trustee Hunt always hiring her firm and herself be declared to be

contrary to her duties as a Trustee, and therefore she must seek independent counsel in

this case and in all other case.

### PRAYER FOR RELIEF

Defendant accordingly prays for the following relief:

As to the First Counterclaim, that defendant has automatically been fully subrogated to

Ross and Wagner's position as judgment creditors regarding the 2015 Judgment when he paid

the Judgment in full plus all interest, pursuant to UCA 78B-5-810, so as to become the new

judgment creditor exclusively entitled to control, enforce, and satisfy the 2015 Judgment against

Debtor (and the estate) in all respects as if defendant had originally obtained the judgment in his

own name;

As to Second Counterclaim: that the Court declare that the Laon and Security iAgreement

is a valid enforceable agreement, and that the contractual lien created thereby is also enforceable

against Debtor and the estate (regardless of whether it has been perfected against other claim by

third parties), and specifically that it constitutes a valid and enforceable lien against the Funds in

the estate;

As to the Third Counterclaim: If the Court for any reason determined there is not an

enforceable agreement in favor of defendant, that the Court nevertheless allow defendant's claim

on the basis of unjust enrichment if he is not compensated for paying the 2015 Judgment;

As to the Fourth Counterclaim: disallow Ross' Claim 7 because of the fraud on the court committed by him and his counsel in order to obtain the sanctions when he in fact never actually incurred any attorney fees for which he needed to be compensated;

As to the Fifth Cause of Action:  disallow Ross' Claim 7 because it was untimely filed, or in the alternative at least make it subordinate to all other timely filed claims.

As to the Sixth Cause of Action;  given the inequitable conduct described therein, that to the extent that any claim is allowed under Ross' Claim 7 that it be equitably subordinated to defendant's claim and the claims of all the other innocent claimants;

As to the Seventh Counterclaim; disallow Bogart's Claim 7 because it is based on a null and void order/judgment issued by a court without any jurisdiction to issue it, and as such it has not created any right for Bogart to be paid anything by Debtor or the estate;

As to the Eighth Counterclaim:  disallow Bogart's Claim 6 as being untimely filed, or in the alternative at least make it subordinate to all other timely filed claims;

As to the Ninth Counterclaim: disallow Bogart's Claim 6 due to the fraud on the court described therein which renders the purported judgment null and void as if it had never been entered, and therefore it has not created any interest for Bogart to collect;

As to the Tenth Counterclaim; disallow Bogart's Claim 6 because the court which entered the purported judgment relied upon by Bogart had lost any jurisdiction to enter the purported judgment having previously dismissed the case, rendering the purported judgment null and void such that it did not create any interest for Bogart to collect;

As to the Eleventh Counterclaim; declare that the current practice of Trustee Hunt

automatically hiring her own firm and herself to be her own legal counsel creates an

unacceptable risk of conflicts of interest which creates an unacceptable risk of impairing the

independence and integrity of the U.S. Trustee's office, and that in this particular case if creates

a conflict of interest for Trustee and her firm to bring a questionable, if not outright frivolous,

action against defendant in order to defeat his valid contractual lien interest so that the Funds in

the estate can then be applied to the administrative expenses of the Trustee, including paying

attorney fees to her own firm instead of the to the creditors; and that Trustee is obligated to

obtain truly independent legal counsel to advise her whether to proceed with this case;

      To the extent permitted, award defendant his attorney fees incurred in defending against

this action and in bringing his counterclaims, and such other relief as may be appropriate under

the circumstances.

      DATED this 12th day of October, 2022.[1]

/s/ Douglas R. Short
Counsel for Defendant

---

[1] By agreement of Carson Heininger defendant was given extra time to file this Amended Answer and Counterclaims due to counsel's heavy workload as a professional accommodation as encouraged by the Utah Standards of Professionalism and Civility.

**CERTIFICATE OF SERVICE**

I certify that the foregoing was served on Plaintiff by means of electronic service when this Answer was filed with the Court:

Counsel for Peggy Hunt:
Peggy Hunt
Michael Thomson
Carson Heninger