**This order is SIGNED.**

**Dated: May 2, 2023**




**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>DOUGLAS RAYMOND SHORT,<br><br>Debtor. | Case No. 19-29471<br><br>Chapter 7<br><br>Adv. Proc. No. 22-02004<br><br>Hon. Kevin R. Anderson |
| MICHAEL THOMSON, Chapter 7 Trustee for the Douglas Short Bankruptcy Estate,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND SHORT,<br><br>Defendant. | |
| RAYMOND SHORT,<br><br>Counterclaimant and Third-Party Plaintiff,<br><br>v.<br><br>MICHAEL THOMSON, Chapter 7 Trustee; YAN ROSS; JOHN BOGART; and TELOS VENTURE GROUP PLLC,<br><br>Counterclaim and Third-Party Defendants. | |

**MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT**

Even in bankruptcy, "blood is thicker than water." In this case, the debtor is an attorney; the debtor's father filed a secured claim for $182,300 against his son's bankruptcy estate; the Trustee objected to the claim; and the debtor, acting as his father's attorney, has advocated for the allowance of the claim. Because of the father's insider status; a lack of objective, supporting evidence; and because many of the claim components arose post-petition, the Court reduces the father's secured claim to $31,300.[1]

## I. UNDISPUTED MATERIAL FACTS

### A. The Judgment Against the Debtor and Raymond Short's Posting of the Supersedeas Bond.

1. In July 2015, the Utah Third Judicial District Court (the "Utah State Court") entered a judgment against Douglas Short (the "Debtor") and in favor of Yan Ross and Randi Wagner (the "Judgment Creditors") in the amount of $27,981.07 with interest at 2.27% from March 11, 2015 (the "2015 Judgment").[2]

2. The Judgment Creditors thereafter commenced collection efforts against the Debtor on the 2015 Judgment.[3]

3. The Debtor approached his father, Raymond Short ("Short"), about funding a supersedeas surety bond to stay the Judgment Creditors' collection efforts while the Debtor appealed the 2015 Judgment.[4]

---

[1] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed to be findings of fact, and they shall be equally binding as both.

[2] ECF No. 21, ¶ 1; *see also* this Court's prior findings of fact made in *Telos Ventures Grp., PLLC v. Short (In re Short)*, Nos. 19-29471, 20-02027, 2021 Bankr. LEXIS 511, at *10, 2021 WL 852058, at *3 (Bankr. D. Utah Mar. 4, 2021). All subsequent references to ECF numbers are to those in this adversary proceeding unless otherwise noted.

[3] ECF No. 21, ¶ 2.

[4] *Id*. ¶ 3.

4. Short agreed to post the bond in exchange for the Debtor's promise to repay the bond cost plus a $40,000 debt from 1998.[5]

5. The Debtor and Short memorialized these terms in a signed agreement dated October 15, 2015, titled Loan and Security Agreement (the "Bond Loan Agreement") that contains the following provisions:[6]

a Short would "commit to provide the supersedeas bond."

b The Debtor "also hereby expressly recognizes that he already owes Raymond W. Short Forty Thousand Dollars ($40,000) in connection with an equipment lease Raymond Short previously provided to Priority Press and Marketing, which lease Douglas Short personally guaranteed, which lease was not in fact repaid."

c The Debtor "hereby agrees to repay all amounts owed to Raymond Short hereunder, or as may become owed hereunder, on such terms as the parties may agree dependent on Douglas Short's variable financial circumstances."

d "In order to secure the surety bond, any cash advances, and the prior lease obligation, Douglas Short hereby pledges any and all of his personal property . . . and agrees that Raymond Short may take such steps as desired to perfect such security interests."

6. In response to interrogatories, Short disclosed that the $40,000 debt was incurred in approximately 1998 (the "1998 Loan").[7] However, Short admitted that he had no documents evidencing the 1998 Loan other than the Bond Loan Agreement.[8] Finally, Short did not produce

---

[5] *Id.* ¶ 2-3.

[6] ECF No. 18, at 23.

[7] *Id.* at 132.

[8] *Id.* at 133.

any evidence that he had actually advanced funds for the 1998 Loan or that the Debtor had ever made any prior payments on the 1998 Loan.[9] Thus, the only evidence of the 1998 Loan is the Debtor's admission of liability in the Bond Loan Agreement.

7. On October 17, 2015, Short filed with the Utah Division of Corporations and Commercial Code a UCC-1 Financing Statement (the "UCC-1") that covered essentially all of the Debtor's personal property, including "all accounts receivable; all rights to payment including wages, salaries, and distributions from any company . . . ."[10]

8. On December 11, 2015, Short posted with the Utah State Court a $30,000 "Supersedeas Bond – Surety" to secure the amounts owed by the Debtor to the Judgment Creditors (the "Supersedeas Bond").[11] On February 10, 2016, Short posted an amended Supersedeas Bond with the Utah State Court in the same amount.[12]

9. The Debtor lost his appeal,[13] and on March 19, 2019, the Judgment Creditors sought to collect on the Supersedeas Bond.[14]

10. By this time, accrued interest had increased the amount owing on the 2015 Judgment to more than $30,000.[15]

11. On April 9, 2019, the Utah State Court ordered Short to pay the Judgment Creditors $30,000 under the Supersedeas Bond by May 9, 2019.[16]

---

[9] *Id*. at 183.

[10] ECF No. 42.

[11] ECF No. 18, at 28.

[12] *Id*. at 33.

[13] *Ross v. Short*, 436 P.3d 318 (Utah Ct. App. 2018).

[14] ECF No. 21, ¶ 17.

[15] ECF No. 18, at 39.

[16] *Id.* In his motion for summary judgment, as well as in his other papers, Short alleges several improprieties by the Judgment Creditors and the Utah State Court regarding the entry of this order. But because the Utah State Court rejected these arguments in subsequent rulings, this Court will not consider them under the concepts of collateral estoppel. *See* Utah State Court's Order Re Contempt and Other Sanctions *and* Order Awarding Costs and Fees Against

12. In November 2019, Short employed attorney Mark Shurtleff ("Attorney Shurtleff") to contest the Judgment Creditors' efforts to collect the Supersedeas Bond.

13. On May 13, 2020, and after many unsuccessful legal challenges before the Utah State Court, Short finally paid the Judgment Creditors $31,300 under the Supersedeas Bond.[17]

14. On June 19, 2020, and because of his refusal to timely pay the Supersedeas Bond, the Utah State Court found that "Short did not have a justification or excuse for his failure to comply with the Court's orders and lacked any good faith basis for failing to comply with the Court's orders." As a result, the Utah State Court held Short in contempt of court.[18]

15. On July 1, 2020, and pursuant to the contempt findings, the Utah State Court ordered Short to pay the Judgment Creditors $28,896.50 in fees and costs within fourteen days with interest at 3.53%.[19]

**B. The Debtor's Bankruptcy Filing.**

16. On December 31, 2019, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[20]

17. The Chapter 7 Trustee[21] investigated the Debtor's financial affairs and found that he held an interest in $48,527.50 in funds held by the law firm Blood & Jensen, P.C. (the "Funds"). The Trustee recovered the Funds, and they are presently in the Trustee's possession.

Raymond Short, ECF No. 18, at 42, 50. Further, under the principles of *res judicata*, this Court will not consider any new arguments by Short regarding the validity of the Utah State Court's final orders.

[17] *Id.* at 24.

[18] *Id*. at 44-45.

[19] *Id*. at 56.

[20] ECF No. 1 in Case No. 19-29471.

[21] Prior to March 8, 2023, the Trustee in the Debtor's main bankruptcy case—and the Plaintiff in this adversary proceeding—was Peggy Hunt. She withdrew as counsel in this proceeding on March 8, ECF No. 43, and resigned as Trustee in the main case on March 10. ECF No. 81 in Case No. 19-29471. The current Trustee and Plaintiff is Michael Thomson.

**C. Short's Proof of Claim.**

18. The deadline to file proofs of claim in the Debtor's case was June 23, 2020.[22]

19. Short filed proof of claim no. 3-1 on the deadline date. He then amended his claim three days later (the "Proof of Claim" or the "Claim").[23]

20. The Proof of Claim asserts a secured claim of $182,300.00 consisting of the following components with the following descriptions:[24]

| | |
|---|---|
| "Original [1998 Loan] with interest up to petition" | $105,000.00 |
| "Payment of supersedeas bond/judgment" | $31,300.00 |
| "Shurtleff fees estimated to date" | $16,000.00 |
| "Attorneys' fees etc. awarded" | $30,000.00 |
| AMOUNT OF CLAIM | $182,300.00 |

21. Short attached the following documents to the Proof of Claim:

a The Bond Loan Agreement.

b A copy of the "Notice of Surety's Payment of 2015 Judgment Against Douglas Short to Yan Ross and Randi Wagner."

c A copy of Short's cashier's check dated May 13, 2020, in the amount of $31,300 and payable to Sean Egan in trust for the Judgment Creditors.

---

[22] Case No. 19-29471, ECF No. 34.

[23] Case No. 19-29471, Claim Nos. 3-1 and 3-2.

[24] While not asserted in the Proof of Claim, Short subsequently contended in a supplemental brief that he was entitled to interest at the rate of 10% on the $31,300 portion of the Claim. That interest allegedly began accruing on May 13, 2020, the date Short paid the Judgment Creditors, and accrued interest totals approximately $9,930. *See* ECF No. 41, at 7. The Court will address Short's entitlement to interest on this portion of the Claim in Section II.F.2, *infra*.

**D. The Adversary Proceeding Objecting to Short's Claim.**

22. On January 21, 2022, the Trustee commenced this adversary proceeding by filing a complaint objecting to the allowance of the Proof of Claim (the "Claim Objection").

23. The Claim Objection asserts that the Bond Loan Agreement is unenforceable and the Proof of Claim lacks documentation supporting its four discrete components as well as proof that the security interest asserted therein is perfected.

24. Short answered by raising sixteen defenses to the Trustee's complaint and then asserting ten counterclaims: six against the Judgment Creditors, including an objection to their proof of clam; four counterclaims against John Bogart and Telos Ventures Group PLLC objecting to their proof of clam; and one counterclaim against the Trustee for hiring the Trustee's own law firm to prosecute the complaint. Other than the Trustee, Short has not served the other counterclaim defendants.

**E. Documents Subsequently Produced in Support of the Claim.**

25. During discovery, the Trustee took Short's deposition and obtained responses to discovery requests to flesh out the background of the Claim's four components. The documents produced during discovery included: (1) an invoice that Attorney Shurtleff billed to Short in the amount of $14,395 for legal services covering November 22, 2019 through June 25, 2020, which period overlaps with the Debtor's petition date of December 31, 2019;[25] and (2) copies of the Utah State Court's orders for sanctions and contempt against Short and requiring him to pay the Judgment Creditors $28,896.50 in attorney's fees.[26]

---

[25] ECF No. 18, at 118-22.

[26] These documents make clear that the Claim estimates the portions attributable to $16,000 in Attorney Shurtleff's fees and $30,000 in attorney's fees awarded to the Judgment Creditors in the Utah State Court. The Claim admits that on its face with respect to the Attorney Shurtleff fees, but the invoice underscores it. That document was not issued until August 1, 2020 (ECF No. 18, at 118), over a month after Short filed his Claim. As for the fees and costs awarded

26. Although required by Bankruptcy Rule 3001(d), Short failed to attach to his Proof of Claim "evidence that the security interest has been perfected." What's more, he did not produce a copy of his UCC-1 financing statement during discovery. Only after oral argument was completed on the motions for summary judgment did Short finally produce his UCC-1.[27]

27. No party filed a continuation statement with respect to the UCC-1, and it lapsed on October 18, 2020, which was after the petition date.

**F. The Motions for Summary Judgment.**

28. On October 17, 2022, the Trustee filed a motion for summary judgment (the "Trustee's MSJ")[28] seeking disallowance of all or a portion of the Claim based on the following arguments: (1) the Bond Loan Agreement is illusory and thus unenforceable; (2) Short lacks proof of and does not hold a perfected security interest in the Funds; (3) there are no written documents supporting the 1998 Loan, either in its original sum of $40,000 or in its presently asserted amount of $105,000 due to $65,000 of accrued interest; (4) most of the $16,000 in Attorney Shurtleff's fees arose post-petition; (5) because Short is the Debtor's father, the Claim is subject to heightened scrutiny; and (6) except for Short's payment on the Supersedeas Bond, which should be limited to $30,000, the other amounts are not supported by documentation or are otherwise unenforceable.

29. On this same date, the Debtor, as Short's attorney, filed a paper captioned Motion for Summary Judgment Granting Short's Second Counterclaim and Dismissing Trustee's First, Second and Third Causes of Action and Request for Hearing ("Short's MSJ").[29] Short's MSJ

---

to the Judgment Creditors, the Utah State Court did not enter its Order Awarding Costs and Fees Against Raymond Short until July 1, 2020, which also occurred after Short filed the Claim.

[27] ECF No. 42.

[28] ECF No. 17.

[29] ECF No. 21.

essentially counters the Trustee's MSJ by seeking a ruling that the Bond Loan Agreement is enforceable and that the Claim is secured by a perfected security interest.[30]

## II. ANALYSIS

### A. Summary Judgment Under Rule 56.

Under Federal Rule of Civil Procedure 56(a), made applicable in adversary proceedings by Bankruptcy Rule 7056, the Court is required to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[32] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[33] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[34]

The moving party bears the burden to show that it is entitled to summary judgment,[35] including the burden to properly support its summary judgment motion as required by Rule 56(c).[36] If the moving party has failed to meet its burden, "summary judgment must be denied," and the

---

[30] Short's MSJ contains a dense narrative of alleged wrongs by the Judgment Creditors and the Utah State Court as justifications for why he did not timely pay the Supersedeas Bond. But the Utah State Court rejected these arguments and found Short to be in contempt for his failure to pay the Supersedeas Bond pursuant to the court's order. Again, under principals of *res judicata* and collateral estoppel, the Court will not consider these arguments and finds them to be irrelevant to the issues presented in this proceeding.

[31] Fed. R. Civ. P. 56(a).

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[33] *Id*.

[34] *Id.* at 249.

[35] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[36] *See Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).

nonmoving party need not respond because "no defense to an insufficient showing is required."[37] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[38] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[39] The nonmoving party also "must do more than simply show that there is some metaphysical doubt as to the material facts."[40] The burdens imposed on litigants at this stage of the proceedings underscore that "summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'"[41]

When considering a motion for summary judgment, the Court views the record and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party,[42] but the Court does not weigh the evidence or make credibility determinations.[43] "On cross-motions for summary judgment, each motion must be considered independently."[44]

**B. The Heightened Scrutiny of Insider Claims.**

Raymond Short is the Debtor's father, but the Debtor is also acting as his father's attorney in advocating for the allowance of his father's claim against his own bankruptcy estate. Therefore, the two men are in three discrete relationships that are relevant to this proceeding: father-son,

---

[37] *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

[38] *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

[39] *Celotex*, 477 U.S. at 324.

[40] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[41] *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

[42] *E.g.*, *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citation omitted).

[43] *Nat'l Am. Ins. Co. v. Am. Re-Insurance Co.*, 358 F.3d 736, 742-43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).

[44] *Hunt v. Steffensen (In re Steffensen)*, 534 B.R. 180, 191 (Bankr. D. Utah 2015) (quoting *Hofmann v. Drabner (In re Baldwin)*, 514 B.R. 646, 650 (Bankr. D. Utah 2014)).

debtor-creditor, and attorney-client. Their consanguineal connection also makes Short an insider of the Debtor under 11 U.S.C. § 101(31)(A)(i).[45] When their attorney-client and debtor-creditor relationships are overlaid on the insider relationship, it produces an uncommon construct of family, business, and attorney associations the Court must consider in resolving the Claim Objection.

While insider claims are entitled to the presumption of allowance under Bankruptcy Rule 3001(f), the Supreme Court holds that such claims need not be accorded "*pari passu* treatment with the claims of other creditors," and that their disallowance "may be necessitated by certain cardinal principles of equity jurisprudence."[46] Thus, when an insider claim is challenged, its allowance is "subjected to rigorous scrutiny," and the burden is on the insider to "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the" debtor and other parties-in-interest.[47] "The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside."[48] Said another way, "claims alleged by an insider are allowable 'when honest and bona fide, but the bona fide must be demonstrated beyond cavil and examined with a large measure of watchful care.'"[49] The Court concurs with these statements and will apply this more stringent standard in analyzing the allowance of Short's insider Claim.

### C. The Shifting Burdens of Proof in Claim Objections.

Bankruptcy Rule 3001(f) provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

---

[45] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

[46] *Pepper v. Litton*, 308 U.S. 295, 306 (1939).

[47] *Id*.

[48] *Id*. at 306-07.

[49] *Schlossberg v. Abell (In re Abell)*, 549 B.R. 631, 670 (Bankr. D. Md. 2016) (quoting *Dzikowski v. Tri-O-Clean Sys., Inc. (In re Tri-O-Clean, Inc.)*, 230 B.R. 192, 198-99 (Bankr. S.D. Fla. 1998)).

However, for a proof of claim to be accorded that evidentiary presumption, it must meet certain requirements, including attaching supporting documentation, proof of a perfected security interest, and an itemization of accrued interest.

The party objecting to a claim "has the burden of going forward with evidence supporting the objection that is of equal probative force as the allegations contained in the proof of claim, after which the claimant will have the burden of persuasion as to the validity and the amount of the claim."[50] However, when a party fails to attach supporting documentation to a claim, the burden more readily shifts to the creditor, who then bears the obligation of persuasion to establish the enforceability, amount, and perfection of an asserted, secured claim.[51] And as explained above, when an objection is made to an insider claim, it is "subjected to rigorous scrutiny" to ensure that it bears the earmarks of a good faith, arm's-length transaction, and that its allowance is fair as to other creditors.

1. Short's Proof of Claim Does Not Comply with Bankruptcy Rule 3001(c) and (d).

Bankruptcy Rule 3001 requires that a claimant attach certain supporting information to the proof of claim. These include the following: (1) a copy of any written document creating the claim; (2) if the claim includes interest, "an itemized statement of the interest"; and (3) if the claim is alleged to be secured, "evidence that the security interest has been perfected."[52]

[50] *Catalina Dev., Inc. v. Given (In re Crowder)*, No. NM-08-017, 2008 Bankr. LEXIS 2403, at *9-10, 2008 WL 4335958, at *3 (10th Cir. BAP Sept. 24, 2008) (unpublished).

[51] *See Caplan v. B–Line, LLC (In re Kirkland)*, 572 F.3d 838, 840-41 (10th Cir. 2009) (holding that without the required supporting documentation, "the burden would have improperly rested with the Trustee to disprove an unsubstantiated claim"); *see also Campbell v. Verizon Wireless S-CA (In re Campbell)*, 336 B.R. 430, 432 (9th Cir. BAP 2005) ("[A] proof of claim filed without sufficient documentation does lack prima facie validity: the claim very likely will not survive a bona fide legal or factual objection absent an adequate response by the creditor.").

[52] Fed. R. Bankr. P. 3001(c)(1), (c)(2)(A), and (d).

The evidence attached to Short's Proof of Claim includes a copy of the Bond Loan Agreement, a breakdown and minimal explanation of the Claim's four components totaling $182,300, and proof that Short paid $31,300 on the Supersedeas Bond. However, the Proof of Claim does not include the following supporting documentation and information: (1) proof of a perfected security interest; (2) documentation establishing the creation and existence of the 1998 Loan; (3) an itemization of $65,000 in interest on the 1998 Loan; (4) an invoice for Attorney Shurtleff's $16,000 in fees; and (5) the Utah State Court's order requiring Short to pay $30,000 in attorney's fees.

Thus, except for Short's payment on the Supersedeas Bond, his Proof of Claim does not comply with Bankruptcy Rule 3001(c) and (d) because it fails to include sufficient supporting documents, the required itemization of interest, and proof of a perfected security interest.

2. The Burden of Proof Shifts to Short to Establish All Portions of His Claim Except for the Uncontested Payment on the Supersedeas Bond.

While Short asserts that the documents attached to the Proof of Claim are all that is needed for the Court to allow the Claim in its entirety, the Court disagrees. The Court must apply rigorous scrutiny to the Claim by virtue of the Claim Objection. Short's failure to attach the required documentation to the Proof of Claim means that, except for the validity and amount of the payment on the Supersedeas Bond, the Claim lacks the prima facie evidentiary presumption under Bankruptcy Rule 3001(f) and, without additional evidentiary support, cannot withstand such scrutiny. Accordingly, and for the following reasons, the Court finds that the burden has shifted to Short to establish by a preponderance of the evidence that he holds (1) legally enforceable claims for the 1998 Loan, Attorney Shurtleff's fees, and the contempt sanction awarded by the Utah State Court; and (2) a perfected security interest in the Funds.

As to the 1998 Loan, the burden has shifted to Short for three reasons. First, Short has not produced any documents establishing the following: (1) the existence of the 1998 Loan; (2) that he ever actually loaned such funds for the Debtor's benefit; (3) that the Debtor ever made payments to Short on the 1998 Loan; or (4) that Short had ever sought to collect on this debt between 1998 and 2015. Second, the Bond Loan Agreement does not contain any specific repayment terms for the 1998 Loan, such as a due date, monthly payment amount, interest rate, etc. Third, the Debtor first affirmed the 1998 Loan in the Bond Loan Agreement shortly after the entry of the 2015 Judgment and immediately after the Judgment Creditors commenced collection actions against him.

As to Attorney Shurtleff's fees and the sanction award for contempt, the Court finds that while the Bond Loan Agreement is a valid contract, it does not contain an express indemnification provision regarding a right to reimbursement for Short's contemptuous conduct before the Utah State Court. Consequently, the burden has shifted to Short to establish a legally enforceable right for reimbursement of Attorney Shurtleff's fees and the contempt sanction.

In summary, other than conclusive proof that Short paid $31,300 on the Supersedeas Bond, Short has failed to support the rest of his Claim with the type of documentation required by Bankruptcy Rule 3001(c) and (d), and the Trustee has raised probative objections to his Claim. Thus, the other components of the Proof of Claim are not entitled to the presumption of allowance as provided by § 502(a) or the presumption of prima facie allowability under Bankruptcy Rule 3001(f), and the burden of proof is on Short to establish their allowability.

**D. The Bond Loan Agreement Is a Valid Contract.**

The Trustee has challenged the enforceability of the Bond Loan Agreement as being illusory in that it does not contain express language obligating Short to post the Supersedeas Bond

or to loan funds to the Debtor. However, the Bond Loan Agreement speaks of Short's "commit[ment] to provide the supersedeas bond[] and to provide any funds" to allow the Debtor to pursue his appeal of the 2015 Judgment. The Bond Loan Agreement also contains the Debtor's promise to repay these amounts even though it contains no specific repayment terms, and it is signed by the Debtor and Short. Thus, while the language of the Bond Loan Agreement contains many ambiguities, the Court finds that it is a valid agreement. However, its bearing on the amount, characterization, and allowability of Short's Claim is discussed below.

### E. The Court Will Not Consider the Alleged Oral Modifications to the Bond Loan Agreement.

Both Short and the Debtor allege that the Bond Loan Agreement was an "unintegrated contract" to which they made subsequent oral modifications. These modifications included a right to interest on the 1998 Loan and a provision that the Debtor "would in fact pay for any attorney fees [Short] incurred in defending against the unlawful Order in Supplemental Proceedings, including paying for Shurtleff's attorney fees . . . ."[53]

While Utah law allows for the oral modification of contracts,[54] the only evidence offered by Short to support these alleged modifications to the Bond Loan Agreement are his and the Debtor's declarations. The Tenth Circuit has made clear that "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings; they must be based on more than mere speculation, conjecture, or surmise. . . . [Courts] do not consider conclusory and self-serving affidavits."[55] The Court concludes that Short's and the Debtor's declarations are conclusory, self-

---

[53] ECF No. 22, ¶ 15; ECF No. 23, ¶ 33.

[54] *See AL-IN Partners, LLC v. LifeVantage Corp.*, 496 P.3d 76, 81 (Utah 2021) ("Parties to written contracts may modify, waive or make new terms regardless of provisions in the contracts to the contrary." (quoting *Dillman v. Massey Ferguson, Inc.*, 369 P.2d 296, 298 (Utah 1962))).

[55] *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) *and Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002)).

serving, and insufficiently probative on this issue to create a genuine dispute of material fact. To put a finer point on it, because of the insider relationship between Short and the Debtor, the Claim must pass rigorous scrutiny. Thus, Short must show that the alleged oral modifications to the Bond Loan Agreement were done in good faith, as part of an arm's-length transaction, and were not done to prejudice other creditors. Without other record facts, the declarations come up well short of demonstrating that there is a triable issue as to whether Short can meet these requirements with respect to the alleged oral modifications. As noted by one bankruptcy court, "where the contractual claim is asserted by an insider, the outcome is controlled by the documentation surrounding the transaction. Otherwise, it is too easy for the insider claimant and the debtor's principal to revise their characterization of the transaction to the prejudice of non-insiders."[56] Therefore, the Court will not consider the declarations or arguments of the Debtor and Short regarding the alleged oral modifications to the Bond Loan Agreement in ruling on the allowance of the Claim.

### F. The Allowed Claim Amounts Arising Under the Bond Loan Agreement Are Limited to Supported, Enforceable, Pre-Petition Obligations.

Short must establish by a preponderance of the evidence that the Claim components for the 1998 Loan, Shurtleff's attorney's fees, and the contempt sanction are supported by objective documentation, that they are legally enforceable against the Debtor, and that they are for amounts that arose prior to the petition date. Because Short is an insider, the Court will analyze his evidence under a heightened degree of scrutiny and examine it with a "large measure of watchful care" to ensure that his claims are honest and bona fide, with the good faith of the debt obligation being "demonstrated beyond cavil."[57] The Court will address each component in turn.

---

[56] *In re Inner City Props., LLC*, No. 13-11552, 2016 Bankr. LEXIS 1660, at *22-24 n.10, 2016 WL 5498688, at *7, n.10 (Bankr. S.D. Ohio Mar. 25, 2016) (citation omitted).

[57] *Schlossberg v. Abell (In re Abell)*, 549 B.R. 631, 670 (Bankr. D. Md. 2016) (quoting *Dzikowski v. Tri-O-Clean Sys., Inc. (In re Tri-O-Clean, Inc.)*, 230 B.R. 192, 198-99 (Bankr. S.D. Fla. 1998)).

1. <u>The 1998 Loan Claim for $105,000.</u>

Short asserts a claim for $105,000 based on the 1998 Loan "with interest up to [the] petition." This total is based on the $40,000 principal amount of the 1998 Loan plus $65,000 in accrued interest. Short asserts that the Bond Loan Agreement is all the documentary evidence needed to allow this Claim component.

*a) Short Has Failed to Carry His Burden Establishing the Creation of the 1998 Loan.*

An allowable claim must be a legally enforceable debt.[58] Thus, the fundamental problem with the 1998 Loan is that the evidence of its creation or existence is not sufficiently probative and the timing of its memorialization in 2015 is too suspect to withstand summary judgment. Specifically, Short has not produced any evidence establishing that there was a lease associated with the Priority Press and Marketing business or that the Debtor was the guarantor of such lease. Likewise, Short has not produced evidence that he actually advanced any funds for the Debtor's benefit in connection with 1998 Loan. Moreover, there is no evidence of any effort by the Debtor to repay—or by Short to collect on—the 1998 Loan.[59] Only seventeen years after the 1998 Loan purportedly arose, and only after the entry of the 2015 Judgment and collection efforts thereon, did the existence of the 1998 Loan first find written memorialization in the Bond Loan Agreement. This lack of evidence and suspicious timing militate against a finding that the 1998 Loan was an actual and legally enforceable debt obligation incurred in 1998.

In response to this paucity of evidence, Short argues that the Bond Loan Agreement is an accord and satisfaction of the 1998 Loan. This argument is without merit. First, an accord and satisfaction requires that there be "an unliquidated claim or bona fide dispute over the amount

[58] § 502(b)(1).

[59] ECF No. 18, at 132-33, 182-84.

due."[60] There is no evidence that the amount of the 1998 Loan was unliquidated or disputed by Short or the Debtor. Second, "[a]n accord and satisfaction arises when the parties to a contract agree that a different performance . . . will discharge the obligation created under the original agreement."[61] Again, there is insufficient evidence of an original agreement regarding the 1998 Loan. Third, the heightened scrutiny standard for insider claims requires greater proof than a self-serving assertion of a seventeen-year-old debt made in proximity to the entry of the 2015 Judgment against the Debtor. For these reasons, the Court rejects this argument and denies Short's MSJ that the Bond Loan Agreement "is enforceable as to [the 1998 Loan] because it is a 'Substituted Contract' based on an accord and satisfaction."[62]

In summary, the lack of written documentation regarding the creation of the 1998 Loan, combined with the seventeen-year delay in its memorialization, which occurred contemporaneously with the Judgment Creditors' collection efforts, and the Debtor's concurrent grant to his father of a security interest in all of the Debtor's assets, is evidence that this debt was not the result of a good faith, arm's-length transaction. Indeed, these facts are more indicative of fraud on the Debtor's creditors.[63] Therefore, the Court concludes that Short has not carried his heightened burden to establish that the 1998 Loan is a legally enforceable claim against the Debtor.

*b) Even if the Court Allowed the 1998 Loan Claim, It Would Not Be Entitled to Accrued Interest.*

Even if allowed, the 1998 Loan of $40,000 would not be entitled to interest. First, because the Proof of Claim fails to include an itemization of interest as required by Bankruptcy Rule

---

[60] *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1013 (10th Cir. 2002) (quoting *ProMax Dev. Corp. v. Raile*, 998 P.2d 254, 259 (Utah 2000)).

[61] *Cove View Excavating & Constr. Co. v. Flynn*, 758 P.2d 474, 476 (Utah Ct. App. 1988) (citations omitted).

[62] ECF No. 21, at 13.

[63] *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991) (holding that transfers to family members under circumstances that are prejudicial to creditors can constitute indicia of fraud).

3001(c)(2)(A), it is not entitled to the presumption of allowability. Second, there is insufficient evidence to establish that the 1998 Loan included an interest component. Specifically, the Bond Loan Agreement makes no mention of an interest accrual on the 1998 Loan. The only evidence Short provided to support the $65,000 interest component are statements in his and the Debtor's declarations to the effect that they subsequently orally agreed to an interest accrual on the 1998 Loan.[64] As held above, the Court will not consider any alleged oral modifications to the Bond Loan Agreement in ruling on the allowance of interest. Even if the Court were to accept an oral agreement to pay interest, neither Short's nor the Debtor's declaration indicates the agreed-upon interest rate, and an agreement to pay interest without a stated rate is insufficient evidence to support the claimed sum of $65,000. However, after the submission of multiple briefs that did not address this issue, Short raised for the first time that the 1998 Loan is entitled to the statutory interest rate of 10% under U.C.A. § 15-1-1.[65]

As a general rule, "Section 15-1-1 permits parties to agree on any interest rate in a contract and provides that, if no interest rate is agreed upon, a ten percent interest rate applies."[66] But the application of that rate is not automatic. Utah law is clear that § 15-1-1 "does not create a right to interest where none otherwise exists."[67] It merely "define[s] what the rate of interest should be in those instances where interest accrues as a matter of law but no specific rate has been agreed to."[68]

---

[64] ECF No. 22, ¶ 21 ("Debtor and [Short] agreed that Debtor owes [Short] interest on the [1998 Loan] and would pay it, even though the rate of interest was not expressly set out in the [Bond Loan Agreement] itself."); ECF No. 23, ¶ 58 ("Debtor and [Short] agreed that Debtor owes [Short] interest on the [1998 Loan] and would pay it, even though interest was not expressly set out in the [Bond Loan Agreement] itself.").

[65] In relevant part, U.C.A. § 15-1-1(2) provides: "Unless the parties to a lawful written, verbal, or implied contract expressly specify a different rate of interest, the legal rate of interest for the contract, including a contract for services, a loan or forbearance of any money, goods, or services, or a claim for breach of contract is 10% per annum."

[66] *USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 669 (Utah 2016) (citing U.C.A. § 15-1-1(1)-(2)).

[67] *Vali Convalescent & Care Insts. v. Div. of Health Care Fin.*, 797 P.2d 438, 445 (Utah Ct. App. 1990).

[68] *Id.*

In other words, for the 10% default interest rate to apply, Short must have an independent, valid basis to assert entitlement to interest on this portion of his Claim.

But Short has produced no evidence supporting an independent entitlement to interest. As noted, the Bond Loan Agreement is unavailing because it is entirely silent on the issue of interest. While the declarations of the Debtor and Short assert a subsequent oral modification to the Bond Loan Agreement to provide for interest on the 1998 Loan, the Court has already ruled that it will not consider these alleged modifications. And even Short's supplemental brief, which alleges entitlement to the 10% interest rate, fails to articulate a legal basis for interest.

A suggested appeal to the common law likewise fails to provide an independent basis for interest. Utah law allows "interest on overdue debts even where no statute so provides."[69] But the Debtor's obligation to repay Short for any amounts under the Bond Loan Agreement has never come due because the Bond Loan Agreement does not contain a due date for repayment. Indeed, the Bond Loan Agreement expressly left the time for repayment open-ended, "on such terms as the parties may agree dependent on [the Debtor's] variable financial circumstances."[70] Short has produced no evidence that he and the Debtor subsequently agreed on a due date for him to repay the 1998 Loan. Absent a due date, that debt is, by definition, not overdue. Since that debt is not overdue, the common law does not create an entitlement to interest. And without an entitlement to interest, the statutory 10% default interest rate is inapplicable to amounts owing under the Bond Loan Agreement.

Again, given their father-son relationship and the proximity of the Bond Loan Agreement to the entry of the 2015 Judgment, these arguments and asserted evidence are insufficiently

---

[69] *Id.* (quoting *Boards of Educ. v. Salt Lake County Comm'n*, 749 P.2d 1264, 1267 (Utah 1988)).

[70] ECF No. 18, at 23.

probative to carry Short's evidentiary burden that these insider transactions were done in good faith, at arm's-length, and not with the intent of hindering the collection efforts of the Judgment Creditors.

In summary, the Court concludes under the heightened scrutiny standard for insider claims that Short has not carried his burden of proof to establish that the 1998 Loan constitutes a bona fide, arm's-length, enforceable claim against his son's bankruptcy estate. Consequently, the Court will disallow the entirety of the 1998 Loan claim in the amount of $105,000 under § 502(b)(1).

2. The $31,300 Claim for Short's Payment on the Supersedeas Bond.

The parties do not dispute that that the Bond Loan Agreement created a legally-enforceable debt when Short paid the Judgment Creditors $31,300 under the Supersedeas Bond on May 13, 2020.[71] As noted previously, Short contended in a supplemental brief that he was entitled to interest on this portion of the Claim despite not including and itemizing such interest in the Proof of Claim as required by Bankruptcy Rule 3001(c)(2)(A). Short asserts that he is entitled to interest at the rate of 10%, again based on U.C.A. § 15-1-1, which, when calculated from the date he paid the Judgment Creditors, has accrued in the present amount of approximately $9,930.

Short has provided no evidence to support his entitlement to interest on this portion of the Claim, however. As held above, the Bond Loan Agreement does not provide for interest. And unlike Short's alleged assertion of interest on the 1998 Loan, neither his nor the Debtor's declaration contends that the parties subsequently agreed that Short would owe interest on the

[71] While Short's obligation on the Supersedeas Bond arose pre-petition pursuant to the Utah State Court's order entered on April 9, 2019, he did not pay that obligation until May 13, 2020, which was after the bankruptcy filing. Because Short's contingent liability under the Supersedeas Bond arose pre-petition but was paid, and thus fixed, post-petition, § 502(e)(2) deems it a pre-petition claim. Section 502(e)(2) reads in full: "A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition."

Supersedeas Bond payments.[72] Therefore, Short's claim for interest is just that: a bare assertion, devoid of any evidentiary support. For these reasons and those set forth above, the Court determines that Short has not carried his burden with respect to interest on this portion of the Claim and therefore denies his $9,930 interest claim. But based on the evidence presented, the Court allows the portion of Short's Claim for $31,300 arising from his payment on the Supersedeas Bond.

3. The $16,000 Claim for Shurtleff's Attorney's Fees.

The Proof of Claim also asserts $16,000 for "Shurtleff fees estimated to date." However, § 502(b) limits allowed bankruptcy claims to amounts owing "as of the date of the filing of the petition." The invoice dated August 1, 2020, covers the period from November 22, 2019, through June 25, 2020, totaling $14,395.[73] Since the Debtor filed for bankruptcy on December 31, 2019, Attorney Shurtleff's pre-petition fees only total $3,937.50. The balance of his fees arose post-petition and thus are not an allowable claim against the bankruptcy estate. Therefore, Short's claim for the reimbursement of all post-petition fees incurred by Attorney Shurtleff is disallowed under § 502(b).

However, even if all of Attorney Shurtleff's fees were incurred pre-petition, their allowance as part of the Claim would be problematic. Utah courts limit a right to attorney's fees under an indemnity clause to reasonable fees that are expressly provided for therein.[74] First, the Bond Loan Agreement does not contain an express indemnification provision. At most, it speaks of a right to repayment for amounts loaned by Short in connection with posting the Supersedeas

[72] Even if the declarations had made such a contention, the Court would not consider it for the reasons stated above.

[73] ECF No. 18, at 118-22.

[74] *See Hi-Country Estates Homeowners Ass'n v. Bagley & Co*., 182 P.3d 417, 425 (Utah Ct. App. 2008) (court denied attorney's fees because they were not incurred under the express terms of the indemnity clause); *James Constructors, Inc. v. Salt Lake City Corp.*, 888 P.2d 665, 674 (Utah Ct. App. 1994) (attorney's fees allowed when expressly provided for in the indemnity agreement); *Pavoni v. Nielsen*, 999 P.2d 595, 599 (Utah Ct. App. 2000) ("Even under express indemnity agreements, 'an indemnitee may recover only those attorney fees reasonably incurred in defending the claim indemnified against . . . .'" (quoting *James Constructors*, 888 P.2d at 673)).

Bond and in providing funds for the Debtor "to hire legal counsel and . . . to defend against the [2015] [J]udgment."[75] There is no mention of an agreement to indemnify Short for any and all conduct, including his own, volitional, contemptuous conduct. Short argues that the Debtor's obligation to indemnify him for attorney's fees arose pursuant to oral agreements between himself and the Debtor. As held above, the Court declines to consider any alleged oral augmentations to the Bond Loan Agreement that Short now asserts to address its gaps, deficiencies, and unstated provisions.[76]

Second, the attorney's fees were not reasonable because Judge Kelly sanctioned Attorney Shurtleff and Short for contemptuous conduct. Short argues that he incurred the attorney's fees in "asserting and preserving his constitutional rights,"[77] but Judge Kelly rejected this argument, and under concepts of *res judicata*, this Court must do likewise. Judge Kelly found that Short "evaded efforts to collect the bond amount, filed frivolous papers in an attempt to delay and obstruct collection, and repeatedly defied orders from this Court to produce documents and appear for supplemental examination."[78] Thus, Short incurred these amounts because of his own contemptuous conduct and meritless legal arguments. He could have avoided Attorney Shurtleff's fees by simply complying with Judge Kelly's initial order to pay the Supersedeas Bond after the Debtor lost his appeal. That Short failed to do so is on him, and it is not reasonable that he should be reimbursed, and thereby essentially rewarded, for his contemptuous conduct.

---

[75] ECF No. 18, at 23.

[76] *See In re Inner City Props., LLC*, No. 13-11552, 2016 Bankr. LEXIS 1660, at *22-24 n.10, 2016 WL 5498688, at *7 n.10 (Bankr. S.D. Ohio Mar. 25, 2016) (insider claims require adequate documentation because "it is too easy for the insider claimant and the debtor's principal to revise their characterization of the transaction to the prejudice of non-insiders").

[77] ECF No. 30, at 12.

[78] ECF No. 18, at 52.

Thus, the Court concludes that, in the absence of more specific language in the Bond Loan Agreement, and because Short incurred the attorney's fees as a result of contemptuous conduct, which is *per se* unreasonable, he does not have a legally enforceable claim to be indemnified for any of Attorney Shurtleff's fees. Therefore, the portion of Short's Claim for the reimbursement of the fees incurred by Attorney Shurtleff is disallowed under § 502(b)(1).

4. The $30,000 Claim for the Utah State Court's Award of Attorney's Fees Against Short.

The fourth and final portion of the Proof of Claim includes $30,000 for "[a]ttorneys' fees etc. awarded." This amount arises from the Utah State Court's order on July 1, 2020, in connection with the contempt sanctions against Short and Attorney Shurtleff. In that order, Judge Kelly awarded $28,896.50 in attorney's fees and costs to the Judgment Creditors "to be paid by Raymond Short within 14 days of the date of this Order."[79] While the Court has the same concerns about the allowance of this amount because it arose from Short's contemptuous conduct, his liability to pay these attorney's fees only arose after the Debtor's bankruptcy filing on December 31, 2019. Thus, the attorney's fees cannot constitute an allowable, pre-petition claim under § 502(b). The Court therefore disallows the portion of Short's Claim for $30,000 arising from Judge Kelly's post-petition award of attorney's fees for contemptuous conduct.

**G. Whether Short Holds a Perfected Security Interest.**

Bankruptcy Rule 3001(d) requires that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." The official proof of claim form likewise instructs claimants to attach documents "that

[79] ECF No. 18, at 56.

show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)."[80]

Short did not comply with these requirements. While the Bond Loan Agreement granted Short a security interest in the Debtor's personal property,[81] the Proof of Claim, which was filed in June 2020, failed to attach any evidence of a perfected security interest. The Claim Objection, filed in January 2022, noted this failure even though the Trustee had requested over a year earlier that Short "provide evidence of a secured claim."[82] The Trustee's MSJ, filed in October 2022, disclosed that state records listed a UCC-1 in Short's name filed in October 2015.[83] Short nonetheless still failed to produce a copy of the UCC-1. It was not until February 7, 2023, over a month after oral argument on the MSJs, that Short at last produced a copy of the UCC-1 confirming that indeed, as of the petition date, he held a perfected security interest in the Debtor's property.[84]

Short's prolonged failure or refusal to provide a copy of the UCC-1, for which there has been no reasonable justification, exemplifies Short's problematic prosecution of his Claim because the Trustee completed briefing in this proceeding without ever receiving a copy of that document from Short. As a result, even the Trustee's supplemental brief, filed a day before Short filed a copy

---

[80] OFFICIAL FORM 410, Question 9, https://www.uscourts.gov/forms/bankruptcy-forms/proof-claim-0.

[81] Under the Bond Loan Agreement, the Debtor granted Short a security interest in "any and all of his personal property whether individually owned or jointly owned with any other person or entity that he now has or hereafter acquires; as well as any and all interests he has in any personal property belonging to any company he now owns or hereafter acquires; . . . including, without limitation: all physical personal property of any nature; all cash or accounts; all accounts receivable, (including all attorney fees any client may owe him); all rights to any payments including wages, salary and distributions; all claims against any person or entity, all interests he has in any legal or corporate entities or companies; all intellectual property; all motor vehicles; all equipment and tools; all computers and cell phones; and so forth[.]" ECF No. 18, at 23. The Bond Loan Agreement further provided that Short "may take such steps as desired to perfect such security interests." *Id.*

[82] ECF No. 1, ¶¶ 49-51.

[83] ECF No. 17, ¶ 34. The Trustee's search results did not include a copy of the UCC-1, but only the listing of a UCC-1 filed under Short's name. *See* ECF No. 18, at 115-16.

[84] *See* ECF No. 42. No party has questioned the authenticity of the UCC-1, and its filing date and initial filing number match those found in the Trustee's search. *Compare* ECF No. 42, at 2, 4, *with* ECF No. 18, at 115.

of the UCC-1, continued to argue that Short still had not complied with Bankruptcy Rule 3001(d),[85] an argument that the Trustee never should have had to make at that stage of the proceeding. Much time, effort, ink, and argument could have been saved by the parties if Short had simply followed the rules and attached the UCC-1 to his Proof of Claim thirty-two months earlier. This has also resulted in a needless waste of judicial resources on an issue that should never have arisen.

1. Does Short's UCC-1 Describe the Funds Held by the Trustee?

As to the merits, the dispositive question is whether Short has a perfected security interest in the Funds held by the Trustee. This question can be divided into two inquiries: first, whether the UCC-1 covers the Funds; and second, what is the legal consequence of the UCC-1 lapsing after the petition date. As to the first inquiry, the broad description of the collateral covered by the UCC-1 largely mirrors the language in the Bond Loan Agreement. It covers "any and all personal property of [the] Debtor[,]" and specifically includes "all cash and accounts; . . . all accounts receivable; [and] all rights to payment including wages, salaries, and distributions from any company."[86] This language is sufficient to cover the Funds. Therefore, the Court concludes that on the petition date, Short had a valid, perfected security interest in the Funds.

2. Does the Post-Petition Lapse of Short's UCC-1 Render His Claim Unsecured?

The second, and more difficult, inquiry is whether the post-petition lapse of the UCC-1 nullifies its perfection. The UCC-1 lapsed on October 18, 2020—five years and a day after its

[85] ECF No. 40, ¶ 6. The suggestion that the Trustee could have obtained a copy of the UCC-1 earlier is beside the point and overlooks that Short had the obligation under the Bankruptcy Rules and the evidentiary burden to provide it in the first place.

[86] ECF No. 42, at 4.

filing.[87] There is no dispute that the UCC-1 lapsed post-petition, and that a continuation statement was not timely filed. The effect of a post-petition lapse of a financing statement on a creditor's secured status can be determined by examining Utah's Uniform Commercial Code at U.C.A. § 70A-9a-515(3):

> Upon lapse, a financing statement ceases to be effective and any security interest . . . that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise. If the security interest . . . becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser of the collateral for value.[88]

The first sentence in this quotation makes clear that Short's security interest became unperfected upon the UCC-1's lapse. Even so, "[t]he lapse of a *financing statement* does not mean that the creditor's *security interest* is extinguished."[89] Instead, "cessation of perfection is a priorities issue—meaning that the security interest becomes vulnerable, from then on, to a loss of priority."[90]

But Short's loss of perfection—and the attendant prospective vulnerability—do not answer the question whether the Claim is secured for purposes of the Debtor's bankruptcy case. This is because, as a general rule, a creditor's rights vis-à-vis a debtor and estate property are fixed as of the petition date. For the post-petition lapse to affect Short's perfected status in the context of the Debtor's bankruptcy case, there must be some statutory provision that would deem the post-petition loss of perfection to have occurred as of the petition date. And the last sentence of U.C.A. § 70A-9a-515(3) suggests that very outcome by deeming a lapsed security interest to "never []

---

[87] See U.C.A. § 70A-9a-515(1) ("[A] filed financing statement is effective for a period of five years after the date of filing.").

[88] U.C.A. § 70A-9a-515(3).

[89] *Colony Beach & Tennis Club Ass'n, Inc. v. Colony Lender, LLC (In re Colony Beach & Tennis Club, Inc.)*, 508 B.R. 468, 480 (Bankr. M.D. Fla. 2014); *see also Firstrust Bank v. Industrial Bank (In re Essex Constr., LLC)*, 591 B.R. 630, 634 (Bankr. D. Md. 2018) ("[Section] 9-515(c) [Maryland's analogue to U.C.A. § 70A-9a-515(3)] . . . provides that the effectiveness of the financing statement lapses, but the underlying security interest is not lost.").

[90] *Colony Beach*, 508 B.R. at 479.

have been perfected." But this retroactive application operates under a controlling caveat—it applies only with respect to purchasers for value. Notably, under the prior version of this section the retroactive effect also applied to lien creditors.[91] The removal of lien creditors from the current version has a significant effect on post-petition lapses of financing statements because trustees in bankruptcy are not purchasers for value under the UCC but rather are deemed to be lien creditors.[92] As a result, a trustee's attempts to use the strong-arm powers of § 544(a)(1) to avoid an unperfected security interest after a post-petition lapse of a financing statement would be unavailing.[93] Since there are no purchasers for value in the Debtor's bankruptcy case, the retroactive effect does not apply, and Short's security interest is not deemed by the UCC to have never been perfected.

Moreover, the entirety of U.C.A. § 70A-9a-515(3) is subject to the so-called "Freeze Rule" in bankruptcy, which "dictates that security interests are determined as of the petition date."[94] While there has been some dispute regarding the continuing validity of that rule,[95] the UCC accommodates it:

> [I]f the debtor enters bankruptcy before lapse, the provisions of this Article with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of the filing of the bankruptcy petition).[96]

---

[91] U.C.A. § 70A-9a-515 cmt. 3.

[92] U.C.A. § 70A-9a-102(52)(c).

[93] *See Essex Constr.*, 591 B.R. at 638 ("It now seems clear that, because a trustee in bankruptcy is a 'lien creditor' and not a 'purchaser of the collateral for value,' § 9-515(c) does not allow a trustee to avoid a lien where the financing statement has lapsed post-petition."); *American Bank, FSB v. Miller Bros. Lumber Co. (In re Miller Bros. Lumber Co.)*, No. 1:12CV720, 2013 WL 5755052, at *5 (M.D.N.C. Oct. 23, 2013) ("[A] lapsed financing statement does not prevent a secured creditor from retaining priority over a junior lien creditor and, by definition, a bankruptcy trustee or DIP. Lien creditors and, by definition, DIPs, no longer receive the benefit of the 'deemed never to have been perfected' position set out in § 25-9-515(c) [North Carolina's analogue to U.C.A. § 70A-9a-515(3)]."). While not pleaded in the Claim Objection, the Trustee has argued that § 544(a) still applies because the Trustee is using it defensively to defeat the Claim. ECF No. 36, at 8 n.3.

[94] *Essex Constr.*, 591 B.R. at 635.

[95] *See generally id.* at 635-40 (discussing cases).

[96] U.C.A. § 70A-9a-515 cmt. 4.

In short, the application of the Freeze Rule has been left to the discretion of the bankruptcy courts.[97]

The parties have not cited the Court to a binding decision proscribing the application of the Freeze Rule to this fact situation, and the Court has found none. The Trustee's citation to *Reliance Equities* is distinguishable. In that case, the Tenth Circuit refused to apply the Freeze Rule to a creditor's security interest that had been automatically but temporarily perfected by operation of statute, but which perfection had expired after the debtor's bankruptcy filing.[98] The Tenth Circuit's decision was premised on the concern that "freez[ing] priorities upon the initiation of insolvency proceedings in an automatic perfection situation would contravene one of the principal purposes of the Bankruptcy Reform Act: to strike down secret liens."[99] The Tenth Circuit noted, however, that "[n]o secret liens are created when perfection occurs by means of a financing statement."[100] Here, Short's lien is not secret. To the contrary, Short filed a financing statement that the Trustee readily discovered through a standard UCC search. Because the policy reasons actuating the decision in *Reliance Equities* are not present here, and because Short's perfection process involves a different statute, the Court concludes that *Reliance Equities* does not determine the outcome in this case.

In contrast, the majority of cases addressing this issue have concluded that the post-petition lapse of a properly filed UCC-1 does not render that security interest unperfected for purposes of its treatment as a secured claim in the bankruptcy case.[101] Based on the application of U.C.A.

---

[97] *Essex Constr.*, 591 B.R. at 636 ("[T]he drafters of the UCC left to the courts to decide whether the security interest should be determined as of the petition date or the date of lapse.").

[98] *Clark v. Valley Fed. Sav. & Loan Ass'n (In re Reliance Equities, Inc.)*, 966 F.2d 1338, 1341-44 (10th Cir. 1992).

[99] *Id.* at 1343 (citations omitted).

[100] *Id.*

[101] *See Colony Beach & Tennis Club Ass'n, Inc. v. Colony Lender, LLC (In re Colony Beach & Tennis Club, Inc.)*, 508 B.R. 468, 480 (Bankr. M.D. Fla. 2014) ("[T]he Court is compelled to conclude that Colony Lender's secured claim against the property of the Partnership's estate did not become 'unsecured' upon the post-petition lapse of its financing statement."); *Highland Constr. Mgmt. Servs., LP v. Wells Fargo, N.A. (In re Highland Constr. Mgmt. Servs.,*

§ 70A-9a-515(3) and the logic of the Freeze Rule, the Court agrees. The Claim was perfected on the petition date, and that status controls for purposes of the Claim Objection despite the post-petition lapse of the UCC-1. The Court thus concludes that Short's allowed claim of $31,300 is secured by the Funds.

## III. CONCLUSION

For the reasons stated herein, the Court grants in part and denies in part both the Trustee's MSJ and Short's MSJ.

### A. The Trustee's MSJ

Based on the undisputed facts, and for the reasons set forth above, the Court grants the Trustee's MSJ as to the following issues:

1. The Trustee objected to the 1998 Loan claim of $105,000 based on the timing of its assertion in the Bond Loan Agreement, the absence of documentation to support the existence of the 1998 Loan, and Short's insider status as the Debtor's father. Moreover, Short failed to come forward with sufficient evidence to create a genuine dispute regarding whether the 1998 Loan was an arm's-length transaction and not done in bad faith or to prejudice other creditors. Further, Short failed to "demonstrate[] beyond cavil"[102] that this was a bona fide transaction between a father and his son, at a time when the son was becoming subject to a money judgment. Because the Trustee

*LP)*, 497 B.R. 829, 843 (Bankr. E.D. Va. 2013) ("[Virginia Code § 8.9A-515(c), Virginia's analogue to U.C.A. § 70A-9a-515(3)] continues the effectiveness of the perfected security interest as to all parties as of the date of the lapse as if no lapse had occurred . . . . That means that the secured party's perfected security interest continues as to the debtor."); *American Bank, FSB v. Miller Bros. Lumber Co. (In re Miller Bros. Lumber Co.)*, No. 1:12CV720, 2013 WL 5755052, at *7 (M.D.N.C. Oct. 23, 2013) (holding that a secured creditor's security interest "even upon lapse, still retains priority over the DIP's judicial lien"); *In re Wilkinson*, No. 10-62223, 2012 WL 1192780, at *5 (Bankr. N.D.N.Y. Apr. 10, 2012) ("[T]he Court holds that a creditor's security interest, perfected and valid at the commencement of a bankruptcy proceeding but due to expire during the pendency of the bankruptcy case, does not lapse where the creditor fails to file a post-petition continuation statement.").

[102] *Schlossberg v. Abell (In re Abell)*, 549 B.R. 631, 670 (Bankr. D. Md. 2016) (quoting *Dzikowski v. Tri-O-Clean Sys., Inc. (In re Tri-O-Clean, Inc.)*, 230 B.R. 192, 198-99 (Bankr. S.D. Fla. 1998)).

has shown that there is no genuine dispute that Short does not hold a legally enforceable claim for the 1998 Loan, and Short has not shown the existence of a genuine dispute on this point, the Court grants the Trustee's MSJ by disallowing in full the 1998 Loan claim of $105,000.

2. The Trustee objected to Short's claim for Attorney Shurtleff's fees in the amount of $16,000 because there is not an express indemnity provision in the Bond Loan Agreement; the debt arose from actions for which the Utah State Court held Short and Attorney Shurtleff in contempt; and the majority of the attorney's fees arose post-petition. But Short failed to come forward with sufficient evidence to create a genuine dispute that there was an enforceable indemnity agreement. Further, he failed to "demonstrate[] beyond cavil"[103] that the Debtor's agreement to indemnify him for violating the orders of the Utah State Court in a contemptuous manner was a bona fide, arm's-length transaction. Because the Trustee has shown that there is no genuine dispute that Short does not hold a legally enforceable claim for Attorney Shurtleff's fees, and Short has not shown the existence of a genuine dispute on this point, the Court grants the Trustee's MSJ by disallowing Short's claim for indemnification for all of Attorney Shurtleff's fees.

3. The Trustee objected to Short's claim for $30,000 arising from the sanction award for his contemptuous conduct. Because this claim arose post-petition, it is not an allowable claim. In addition, because it arose from Short's own contemptuous conduct in not paying the Supersedeas Bond when the Debtor lost his appeal, the Court further finds this to be an improper claim against the estate. For these reasons, the Court grants the Trustee's MSJ by disallowing the $30,000 claim arising from the contempt sanctions against Short.

---

[103] *Id.*

4. As to the claim for $31,300, the Court grants in part and denies in part the Trustee's MSJ. Short has established that he paid this amount on the Supersedeas Bond and that he held a legally enforceable claim for repayment from the Debtor under the Bond Loan Agreement. Therefore, the Court allows this claim up to $31,300.

5. As to Short's security interest, the Court denies the Trustee's MSJ and finds that the UCC-1 was valid and enforceable on the petition date, which is the controlling date. Therefore, Short's claim for $31,300 is allowed as a secured claim.

**B. Short's MSJ**

1. Consistent with the rulings above, the Court grants Short's MSJ that the Bond Loan Agreement is a valid contract and that he held a perfected security interest as of the petition date.

2. The Court denies Short's MSJ as to the allowance of $105,000 under the 1998 Loan.

**C. Short's Allowed Claim**

In summary, the Court concludes that Short holds an allowed, secured claim in the total amount of $31,300. The balance of the Claim is disallowed.

**D. The Remaining Causes of Action**

The fourth cause of action in the Trustee's complaint seeks the equitable subordination of the entire Claim because Short is an insider and because of his contemptuous conduct before the Utah State Court in resisting payment of the Supersedeas Bond. The Trustee did not seek a ruling on this cause of action, and therefore it remains outstanding.

All of Short's counterclaims likewise remain unresolved. The Court will issue a separate Order and Judgment in accordance with this Memorandum Decision.

__________END OF DOCUMENT__________

———————ooo0ooo———————

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Carson Heninger heningerc@gtlaw.com, SLCLitDock@gtlaw.com
- Douglas R. Short mail@consumerlawutah.com, douglasrshort@gmail.com;as@consumerlawutah.com
- Michael F. Thomson thomsonm@gtlaw.com, stuverm@gtlaw.com;Suzanne.Williams@gtlaw.com;ut17@ecfcbis.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

John Bogart
500 Westover Drive, #12745
Sanford, NC 27330

Yan Ross
500 Westover Drive, # 12745
Sanford, NC 27330

Raymond W Short
2421 East Bramble Way
Holladay, UT 84117

Telos Ventures Group PLLC
500 Westover Drive #12745
Sanford, NC 27330